Justice Kennedy
delivered the opinion of the Court.
This case turns on the interpretation and proper application of Rule 19 of the Federal Rules of Civil Procedure and requires us to address the Rule’s operation in the context of foreign sovereign immunity.
This interpleader action was commenced to determine the ownership of property allegedly stolen by Ferdinand Marcos *855 when he was the President of the Republic of the Philippines. Two entities named in the suit invoked sovereign immunity. They are the Republic of the Philippines and the Philippine Presidential Commission on Good Governance, referred to in turn as the Republic and the Commission. They were dismissed, but the interpleader action proceeded to judgment over their objection. Together with two parties who remained in the suit, the Republic and the Commission now insist it was error to allow the litigation to proceed. Under Rule 19, they contend, the action should have been dismissed once it became clear they could not be joined as parties without their consent.
The United States Court of Appeals for the Ninth Circuit, agreeing with the District Court, held the action could proceed without the Republic and the Commission as parties. Among the reasons the Court of Appeals gave was that the absent, sovereign entities would not prevail on their claims. We conclude the Court of Appeals gave insufficient weight to the foreign sovereign status of the Republic and the Commission, and that the court further erred in reaching and discounting the merits of their claims.
I
A
When the opinion of the Court of Appeals is consulted, the reader will find its quotations from Rule 19 do not accord with its text as set out here; for after the case was in the Court of Appeals and before it came here, the text of the Rule changed. The Rules Committee advised the changes were stylistic only, see Advisory Committee’s Notes on 2007 Amendment to Fed. Rule Civ. Proc. 19, 28 U. S. C., p. 826 (2006 ed., Supp. I); and we agree. These are the three relevant stylistic changes. First, the word “required” replaced the word “necessary” in subparagraph (a). Second, the 1966 Rule set out factors in longer clauses and the 2007 Rule sets out the factors affecting joinder in separate lettered head *856 ings. Third, the word “indispensable,” which had remained as a remnant of the pre-1966 Rule, is altogether deleted from the current text. Though the word “indispensable” had a lesser place in the 1966 Rule, it still had the latent potential to mislead.
As the substance and operation of the Rule both pre- and post-2007 are unchanged, we will refer to the present, revised version. The pre-2007 version is printed in the appendix to this opinion, infra, at 873-875. The current Rule states, in relevant part, as follows:
“Rule 19. Required Joinder of Parties
“(a) Persons Required to Be Joined if Feasible.
“(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
“(A) in that person’s absence, the court cannot accord complete relief among existing parties; or
“(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person’s absence may:
“(i) as a practical matter impair or impede the person’s ability to protect the interest; or
“(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
“(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.
“(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.
*857 “(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
“(1) the extent to which a judgment rendered in the person’s absence might prejudice that person or the existing parties;
“(2) the extent to which any prejudice could be lessened or avoided by:
“(A) protective provisions in the judgment;
“(B) shaping the relief; or “(C) other measures;
“(3) whether a judgment rendered in the person’s absence would be adequate; and
“(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.” Fed. Rules Civ. Proc. 19(a)-(b), 28 U. S. C.
See also Rule 19(c) (imposing pleading requirements); Rule 19(d) (creating exception for class actions).
B
In 1972, Ferdinand Marcos, then President of the Republic, incorporated Arelma, S. A. (Arelma), under Panamanian law. Around the same time, Arelma opened a brokerage account with Merrill Lynch, Pierce, Fenner & Smith Inc. (Merrill Lynch) in New York, in which it deposited $2 million. As of the year 2000, the account had grown to approximately $35 million.
Alleged crimes and misfeasance by Marcos during his presidency became the subject of worldwide attention and protest. A class action by and on behalf of some 9,539 of his human rights victims was filed against Marcos and his estate, among others. The class action was tried in the United *858 States District Court for the District of Hawaii and resulted in a nearly $2 billion judgment for the class. See Hilao v. Estate of Marcos, 103 F. 3d 767 (CA9 1996). We refer to that litigation as the Pimentel case and to its class members as the Pimentel class. In a related action, the Estate of Roger Roxas and Golden Budha [sic] Corporation (the Roxas claimants) claim a right to execute against the assets to satisfy their own judgment against Marcos’ widow, Imelda Marcos. See Roxas v. Marcos, 89 Haw. 91, 113-115, 969 P. 2d 1209, 1231-1233 (1998).
The Pimentel class claims a right to enforce its judgment by attaching the Arelma assets held by Merrill Lynch. The Republic and the Commission claim a right to the assets under a 1955 Philippine law providing that property derived from the misuse of public office is forfeited to the Republic from the moment of misappropriation. See An Act Declaring Forfeiture in Favor of the State Any Property Found To Have Been Unlawfully Acquired by Any Public Officer or Employee and Providing for the Proceedings Therefor, Rep. Act No. 1379, 51:9 O. G. 4457 (June 18, 1955).
After Marcos fled the Philippines in 1986, the Commission was created to recover any property he wrongfully took. Almost immediately the Commission asked the Swiss Government for assistance in recovering assets — including shares in Arelma — that Marcos had moved to Switzerland. In compliance the Swiss Government froze certain assets and, in 1990, that freeze was upheld by the Swiss Federal Supreme Court. In 1991, the Commission asked the Sandiganbayan, a Philippine court of special jurisdiction over corruption cases, to declare forfeited to the Republic any property Marcos had obtained through misuse of his office. That litigation is still pending in the Sandiganbayan.
The Swiss assets were transferred to an escrow account set up by the Commission at the Philippine National Bank (PNB), pending the Sandiganbayan’s decision as to their rightful owner. The Republic and the Commission re *859 quested that Merrill Lynch follow the same course and transfer the Arelma assets to an escrow account at PNB. Merrill Lynch did not do so. Facing claims from various Marcos creditors, including the Pimentel class, Merrill Lynch instead filed an interpleader action under 28 U. S. C. § 1335. The named defendants in the interpleader action were, among others, the Republic and the Commission, Arelma, PNB, and the Pimentel class (the respondents here).
The Pimentel case had been tried as a class action before Judge Manuel Real of the United States District Court for the Central District of California, who was sitting by designation in the District of Hawaii after the Judicial Panel on Multidistrict Litigation consolidated the various human rights complaints against Marcos in that court. See Hilao, supra, at 771. Judge Real directed Merrill Lynch to file the interpleader action in the District of Hawaii, and he presided over the matter.
After being named as defendants in the interpleader action, the Republic and the Commission asserted sovereign immunity under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U. S. C. § 1604. They moved to dismiss pursuant to Rule 19(b), based on the premise that the action could not proceed without them. Arelma and PNB also moved to dismiss pursuant to Rule 19(b). Without addressing whether they were entitled to sovereign immunity, Judge Real initially rejected the request by the Republic and the Commission to dismiss the interpleader action. They appealed, and the Court of Appeals reversed. It held the Republic and the Commission are entitled to sovereign immunity and that under Rule 19(a) they are required parties (or “necessary” parties under the old terminology). See In re Republic of the Philippines, 309 F. 3d 1143, 1149-1152 (CA9 2002). The Court of Appeals entered a stay pending the outcome of the litigation in the Sandiganbayan over the Marcos assets. See id., at 1152-1153.
*860 After concluding that the pending litigation in the Sandiganbayan could not determine entitlement to the Arelma assets, Judge Real vacated the stay, allowed the action to proceed, and awarded the assets to the Pimentel class. A week later, in the case initiated before the Sandiganbayan in 1991, the Republic asked that court to declare the Arelma assets forfeited, arguing the matter was ripe for decision. The Sandiganbayan has not yet ruled.
In the interpleader case the Republic, the Commission, Arelma, and PNB appealed the District Court’s judgment in favor of the Pimentel claimants. This time the Court of Appeals affirmed. See Merrill Lynch, Pierce, Fenner & Smith v. ENC Cory., 464 F. 3d 885 (CA9 2006). Dismissal of the interpleader suit, it held, was not warranted under Rule 19(b) because, though the Republic and the Commission were required (“necessary”) parties under Rule 19(a), their claim had so little likelihood of success on the merits that the interpleader action could proceed without them. One of the reasons the court gave was that any action commenced by the Republic and the Commission to recover the assets would be barred by New York’s 6-year statute of limitations for claims involving the misappropriation of public property. See N. Y. Civ. Prac. Law Ann. §213 (West Supp. 2008). The court thus found it unnecessary to consider whether any prejudice to the Republic and the Commission might be lessened by some form of judgment or interim decree in the interpleader action. The court also considered the failure of the Republic and the Commission to obtain a judgment in the Sandiganbayan — despite the Arelma share certificates having been located and held in escrow at PNB since 1997-1998 — to be an equitable consideration counseling against dismissal of the interpleader suit. The court further found it relevant that allowing the interpleader case to proceed would serve the interests of the Pimentel class, which, at this point, likely has no other available forum in *861 which to enforce its judgment against property belonging to Marcos.
This Court granted certiorari. See 552 U. S. 1061 (2007).
II
We begin with the question we asked the parties to address when we granted certiorari: Whether the Republic and the Commission, having been dismissed from the inter-pleader action based on their successful assertion of sovereign immunity, had the right to appeal the District Court’s determination under Rule 19 that the action could proceed in their absence; and whether they have the right to seek this Court’s review of the Court of Appeals’ judgment affirming the District Court. See ibid.
Respondents contend that the Republic and the Commission were not proper parties in the Court of Appeals when it reviewed the District Court’s judgment allowing the action to proceed without them; and, respondents continue, the Republic and the Commission are not proper parties in the instant proceeding before us. See Brief for Respondent Pimentel 21.
Without implying that respondents are correct in saying the Republic and the Commission could neither appeal nor become parties here, we conclude we need not rule on this point. Other parties before us, Arelma and PNB, also seek review of the Court of Appeals’ decision affirming the District Court. They, too, moved to dismiss the action under Rule 19(b), appealed from the denial of their motion, and are petitioners before this Court. As a general matter any party may move to dismiss an action under Rule 19(b). A court with proper jurisdiction may also consider sua sponte the absence of a required person and dismiss for failure to join. See, e. g., Minnesota v. Northern Securities Co., 184 U. S. 199, 235 (1902); see also Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U. S. 102, 111 (1968).
*862 Respondents argue, however, that Arelma and PNB have no standing to raise before this Court the question whether the action may proceed in the absence of the Republic and the Commission. Arelma and PNB lost on the merits of their underlying claims to the interpleaded assets in both the District Court and the Court of Appeals. By failing to petition for certiorari on that merits ruling, respondents contend, Arelma and PNB abandoned any entitlement to the interpleaded assets and therefore lack a concrete stake in the outcome of further proceedings. We disagree. Dismissal of the action under Rule 19(b) would benefit Arelma and PNB by vacating the judgment denying them the interpleaded assets. A party that seeks to have a judgment vacated in its entirety on procedural grounds does not lose standing simply because the party does not petition for certiorari on the substance of the order.
Ill
We turn to the question whether the interpleader action could proceed in the District Court without the Republic and the Commission as parties.
Subdivision (a) of Rule 19 states the principles that determine when persons or entities must be joined in a suit. The Rule instructs that nonjoinder even of a required person does not always result in dismissal. Subdivision (a) opens by noting that it addresses joinder “if Feasible.” Where joinder is not feasible, the question whether the action should proceed turns on the factors outlined in subdivision (b). The considerations set forth in subdivision (b) are nonexclusive, as made clear by the introductory statement that “[t]he factors for the court to consider include.” Fed. Rule Civ. Proc. 19(b). The general direction is whether “in equity and good conscience, the action should proceed among the existing parties or should be dismissed.” Ibid. The design of the Rule, then, indicates that the determination *863 whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable considerations. This is also consistent with the fact that the determination of who may, or must, be parties to a suit has consequences for the persons and entities affected by the judgment; for the judicial system and its interest in the integrity of its processes and the respect accorded to its decrees; and for society and its concern for the fair and prompt resolution of disputes. See, e. g., Illinois Brick Co. v. Illinois, 481 U. S. 720, 737-739 (1977). For these reasons, the issue of joinder can be complex, and determinations are case specific. See, e. g., Provident Bank, supra, at 118-119.
Under the earlier Rules the term “indispensable party” might have implied a certain rigidity that would be in tension with this case-specific approach. The word “indispensable” had an unforgiving connotation that did not fit easily with a system that permits actions to proceed even when some persons who otherwise should be parties to the action cannot be joined. As the Court noted in Provident Bank, the use of “indispensable” in Rule 19 created the “verbal anomaly” of an “indispensable person who turns out to be dispensable after all.” 390 U. S., at 117, n. 12. Though the text has changed, the new Rule 19 has the same design and, to some extent, the same tension. Required persons may turn out not to be required for the action to proceed after all.
In all events it is clear that multiple factors must bear on the decision whether to proceed without a required person. This decision “must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests.” Id., at 119.
IV
We turn to Rule 19 as it relates to this case. The application of subdivision (a) of Rule 19 is not contested. The Republic and the Commission are required entities because *864 “[w]ithout [them] as parties in this interpleader action, their interests in the subject matter are not protected.” In re Republic of Philippines, 309 F. 3d, at 1152; see Fed. Rule Civ. Proc. 19(a)(l)(B)(i). All parties appear to concede this. The disagreement instead centers around the application of subdivision (b), which addresses whether the action may proceed without the Republic and the Commission, given that the Rule requires them to be parties.
We have not addressed the standard of review for Rule 19(b) decisions. The case-specific inquiry that must be followed in applying the standards set forth in subdivision (b), including the direction to consider whether “in equity and good conscience” the case should proceed, implies some degree of deference to the district court. In this case, however, we find implicit in the District Court’s rulings, and explicit in the opinion of the Court of Appeals, errors of law that require reversal. Whatever the appropriate standard of review, a point we need not decide, the judgment could not stand. Cf. Koon v. United States, 518 U. S. 81, 99-100 (1996) (a court “by definition abuses its discretion when it makes an error of law”).
The Court of Appeals erred in not giving the necessary weight to the absent entities’ assertion of sovereign immunity. The court in effect decided the merits of the Republic and the Commission’s claims to the Arelma assets. Once it was recognized that those claims were not frivolous, it was error for the Court of Appeals to address them on their merits when the required entities had been granted sovereign immunity. The court’s consideration of the merits was itself an infringement on foreign sovereign immunity; and, in any event, its analysis was flawed. We discuss these errors first in the context of how they affected the Court of Appeals’ analysis under the first factor of Rule 19(b). We then explain that the outcome suggested by the first factor is confirmed by our analysis under the other provisions of Rule 19(b). The action may not proceed.
*865 A
As to the first Rule 19(b) factor — the extent to which a judgment rendered in the person’s absence might prejudice that person or the existing parties, Fed. Rule Civ. Proc. 19(b)(1) — the judgment of the Court of Appeals is incorrect.
In considering whether the Republic and the Commission would be prejudiced if the action were to proceed in their absence, the Court of Appeals gave insufficient weight to their sovereign status. The doctrine of foreign sovereign immunity has been recognized since early in the history of our Nation. It is premised upon the “perfect equality and absolute independence of sovereigns, and th[e] common interest impelling them to mutual intercourse.” Schooner Exchange v. McFaddon, 7 Cranch 116, 137 (1812). The Court has observed that the doctrine is designed to “give foreign states and their instrumentalities some protection from the inconvenience of suit,” Dole Food Co. v. Patrickson, 538 U. S. 468, 479 (2003).
The privilege is codified by federal statute. FSIA, 28 U. S. C. §§ 1330, 1602-1611, provides that “a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607,” absent existing international agreements to the contrary. § 1604; see Verlinden B. V. v. Central Bank of Nigeria, 461 U. S. 480, 486-489 (1983) (explaining the history of the doctrine’s codification). Exceptions to the general principle of foreign sovereign immunity are contained in §§ 1605-1607 of the statute. They are inapplicable here, or at least the parties do not invoke them. Immunity in this case, then, is uncontested; and pursuant to the Court of Appeals’ earlier ruling on the issue, the District Court dismissed the Republic and the Commission from the action on this ground.
The District Court and the Court of Appeals failed to give full effect to sovereign immunity when they held the action could proceed without the Republic and the Commission. *866 Giving full effect to sovereign immunity promotes the comity interests that have contributed to the development of the immunity doctrine. See, e. g., id., at 486 (“[F]oreign sovereign immunity is a matter of grace and comity”); National City Bank of N. Y. v. Republic of China, 348 U. S. 356, 362, and n. 7 (1955) (foreign sovereign immunity derives from “standards of public morality, fair dealing, reciprocal self-interest, and respect for the ‘power and dignity’ of the foreign sovereign” (citing Schooner Exchange, supra, at 136-137, 143-144)).
Comity and dignity interests take concrete form in this case. The claims of the Republic and the Commission arise from events of historical and political significance for the Republic and its people. The Republic and the Commission have a unique interest in resolving the ownership of or claims to the Arelma assets and in determining if, and how, the assets should be used to compensate those persons who suffered grievous injury under Marcos. There is a comity interest in allowing a foreign state to use its own courts for a dispute if it has a right to do so. The dignity of a foreign state is not enhanced if other nations bypass its courts without right or good cause. Then, too, there is the more specific affront that could result to the Republic and the Commission if property they claim is seized by the decree of a foreign court. Cf. Republic of Mexico v. Hoffman, 324 U. S. 30, 35-36 (1945) (pre-FSIA, common-law doctrine dictated that courts defer to executive determination of immunity because “[t]he judicial seizure” of the property of a friendly state may be regarded as “an affront to its dignity and may . . . affect our relations with it”).
Though this Court has not considered a case posing the precise question presented here, there are some authorities involving the intersection of joinder and the governmental immunity of the United States. See, e. g., Mine Safety Appliances Co. v. Forrestal, 326 U. S. 371, 373-375 (1945) (dismissing an action where the Under Secretary of the Navy *867 was sued in his official capacity, because the Government was a required entity that could not be joined when it withheld consent to be sued); Minnesota v. United States, 305 U. S. 382, 386-388 (1939) (dismissing the action for nonjoinder of a required entity where the United States was the owner of the land in question but had not consented to suit). The analysis of the joinder issue in those cases was somewhat perfunctory, but the holdings were clear: A case may not proceed when a required-entity sovereign is not amenable to suit. These cases instruct us that where sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign.
The Court of Appeals accordingly erred in undertaking to rule on the merits of the Republic and the Commission’s claims. There may be eases where the person who is not joined asserts a claim that is frivolous. In that instance a court may have leeway under both Rule 19(a)(1), defining required parties, and Rule 19(b), addressing when a suit may go forward nonetheless, to disregard the frivolous claim. Here, the claims of the absent entities are not frivolous; and the Court of Appeals should not have proceeded on the premise that those claims would be determined against the sovereign entities that asserted immunity.
The Court of Appeals determined that the claims of the Republic and the Commission as to the assets would not succeed because a suit would be time barred in New York. This is not necessarily so. If the Sandiganbayan rules that the Republic owns the assets or stock of Arelma because Marcos did not own them and the property was forfeited to the Republic under Philippine law, then New York misappropriation rules might not be the applicable law. For instance, the Republic and the Commission, standing in for Arelma based upon the Sandiganbayan’s judgment, might not pursue a misappropriation of public property suit, as the Court of Appeals assumed they would. They might instead, or in the *868 alternative, file suit for breach of contract against Merrill Lynch. They would argue the statute of limitations would start to run if and when Merrill Lynch refused to hand over the assets. See N. Y. Civ. Prac. Law Ann. § 213 (West Supp. 2008); Ely-Cruikshank, Co. v. Bank of Montreal, 81 N. Y. 2d 399, 402, 615 N. E. 2d 985, 986 (1993) (“In New York, a breach of contract cause of action accrues at the time of the breach”). Or the Republic and the Commission might bring an action either in state or federal court to enforce the Sandiganbayan’s judgment. See 1 Restatement (Third) of Foreign Relations Law of the United States § 482, Comment a (1986) (jurisdiction of foreign court rendering judgment is presumed); id., Comment d (providing exceptions not relevant here); see also 28 U. S. C. § 2467(c) (providing for enforcement of foreign forfeiture judgments in certain circumstances). Merrill Lynch makes arguments why these actions would not succeed, see Brief for Merrill Lynch as Amicus Curiae 26-27, to which the Republic, the Commission, and the United States respond, see Reply Brief for Petitioners 14-18; Brief for United States as Amicus Curiae 24-28. We need not seek to predict the outcomes. It suffices that the claims would not be frivolous.
As these comments indicate, Rule 19 cannot be applied in a vacuum, and it may require some preliminary assessment of the merits of certain claims. For example, the Rule directs a court, in determining who is a required person, to consider whether complete relief can be afforded in their absence. See Fed. Rule Civ. Proc. 19(a)(1)(A). Likewise, in the Rule 19(b) inquiry, a court must examine, to some extent, the claims presented and the interests likely to be asserted both by the joined parties and the absent entities or persons. Here, however, it was improper to issue a definitive holding regarding a nonfrivolous, substantive claim made by an absent, required entity that was entitled by its sovereign status to immunity from suit. That privilege is much diminished if an important and consequential ruling affecting the sover *869 eign’s substantial interest is determined, or at least assumed, by a federal court in the sovereign’s absence and over its objection.
As explained above, the decision to proceed in the absence of the Republic and the Commission ignored the substantial prejudice those entities likely would incur. This most directly implicates Rule 19(b)’s first factor, which directs consideration of prejudice both to absent persons and those who are parties. We have discussed the absent entities. As to existing parties, we do not discount the Pimentel class’ interest in recovering damages it was awarded pursuant to a judgment. Furthermore, combating public corruption is a significant international policy. The policy is manifested in treaties providing for international cooperation in recovering forfeited assets. See, e. g., United Nations Convention Against Corruption, G. A. Res. 58/4, chs. IV and V, U. N. Doc. A/RES/58/4, pp. 22, 32 (Dec. 11, 2003) (reprinted in 43 I. L. M. 37 (2004)); Treaty on Mutual Legal Assistance in Criminal Matters Art. 16, Nov. 13, 1994, S. Treaty Doc. No. 104-18 (1995). This policy does support the interest of the Pimentel class in recovering damages awarded to it. But it also underscores the important comity concerns implicated by the Republic and the Commission in asserting foreign sovereign immunity. The error is not that the District Court and the Court of Appeals gave too much weight to the interest of the Pimentel class, but that it did not accord proper weight to the compelling claim of sovereign immunity.
Based on these considerations we conclude the District Court and the Court of Appeals gave insufficient weight to the likely prejudice to the Republic and the Commission should the interpleader proceed in their absence.
B
As to the second Rule 19(b) factor — the extent to which any prejudice could be lessened or avoided by relief or measures alternative to dismissal, Fed. Rule Civ. Proc. 19(b)(2)— *870 there is no substantial argument to allow the action to proceed. No alternative remedies or forms of relief have been proposed to us or appear to be available. See 7 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1608, pp. 106-110 (3d ed. 2001) (collecting cases using alternative forms of relief, including the granting of money damages rather than specific performance, the use of declaratory judgment, and the direction that payment be withheld pending suits against the absent party). If the Marcos estate did not own the assets, or if the Republic owns them now, the claim of the Pimentel class likely fails; and in all events, if there are equally valid but competing claims, that too would require adjudication in a case where the Republic and the Commission are parties. See State Farm Fire & Casualty Co. v. Tashire, 386 U. S. 523, 534, and n. 16 (1967); Russell v. Clark’s Executors, 7 Cranch 69, 98-99 (1812) (Marshall, C. J.); Wichita & Affiliated Tribes of Okla. v. Hodel, 788 F. 2d 765, 774 (CADC 1986) (“Conflicting claims by beneficiaries to a common trust present a textbook example of a case where one party may be severely prejudiced by a decision in his absence” (citing Williams v. Bankhead, 19 Wall. 563, 570-571 (1874))).
C
As to the third Rule 19(b) factor — whether a judgment rendered without the absent party would be adequate, Fed. Rule Civ. Proe. 19(b)(3) — the Court of Appeals understood “adequacy” to refer to satisfaction of the Pimentel class’ claims. But adequacy refers to the “public stake in settling disputes by wholes, whenever possible.” Provident Bank, 390 U. S., at 111. This “social interest in the efficient administration of justice and the avoidance of multiple litigation” is an interest that has “traditionally been thought to support compulsory joinder of absent and potentially adverse claimants.” Illinois Brick Co., 431 U. S., at 737-738. Going forward with the action without the Republic and the Commission would not further the public interest in settling the *871 dispute as a whole because the Republic and the Commission would not be bound by the judgment in an action where they were not parties.
D
As to the fourth Rule 19(b) factor — whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, Fed. Rule Civ. Proc. 19(b)(4) — the Court of Appeals made much of what it considered the tort victims’ lack of an alternative forum should this action be dismissed. This seems to assume the plaintiff in this interpleader action was the Pimentel class. It is Merrill Lynch, however, that has the statutory status of plaintiff as the stakeholder in the interpleader action.
It is true that, in an interpleader action, the stakeholder is often neutral as to the outcome, while other parties press claims in the manner of a plaintiff. That is insufficient, though, to overcome the statement in the interpleader statute that the stakeholder is the plaintiff. See 28 U. S. C. § 1335(a) (conditioning jurisdiction in part upon whether “the plaintiff has deposited such money or property” at issue with the district court or has “given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper”). We do not ignore that, in context, the Pimentel class (and indeed all interpleader claimants) are to some extent comparable to the plaintiffs in noninterpleader cases. Their interests are not irrelevant to the Rule 19(b) equitable balance; but the other provisions of the Rule are the relevant ones to consult.
Merrill Lynch, as the stakeholder, makes the point that if the action is dismissed it loses the benefit of a judgment allowing it to disburse the assets and be done with the matter. Dismissal of the action, it urges, leaves it without an adequate remedy, for it “could potentially be forced ... to defend lawsuits by the various claimants in different jurisdictions, possibly leading to inconsistent judgments.” Brief for Merrill Lynch as Amicus Curiae 14. A dismissal of the *872 action on the ground of nonjoinder, however, will protect Merrill Lynch in some respects. That disposition will not provide Merrill Lynch with a judgment determining the party entitled to the assets, but it likely would provide Merrill Lynch with an effective defense against piecemeal litigation and inconsistent, conflicting judgments. As matters presently stand, in any later suit against it Merrill Lynch may seek to join the Republic and the Commission and have the action dismissed under Rule 19(b) should they again assert sovereign immunity. Dismissal for nonjoinder to some extent will serve the purpose of interpleader, which is to prevent a stakeholder from having to pay two or more parties for one claim.
Any prejudice to Merrill Lynch in this regard is outweighed by prejudice to the absent entities invoking sovereign immunity. Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims. But that result is contemplated under the doctrine of foreign sovereign immunity. See, e. g., Verlinden, 461 U. S., at 497 (“[I]f a court determines that none of the exceptions to sovereign immunity applies, the plaintiff will be barred from raising his claim in any court in the United States”).
V
The Court of Appeals’ failure to give sufficient weight to the likely prejudice to the Republic and the Commission should the interpleader proceed in their absence would, in the usual course, warrant reversal and remand for further proceedings. In this case, however, that error and our further analysis under the additional provisions of Rule 19(b) lead us to conclude the action must be dismissed. This leaves the Pimentel class, which has waited for years now to be compensated for grievous wrongs, with no immediate way to recover on its judgment against Marcos. And it leaves Merrill Lynch, the stakeholder, without a judgment.
*873 The balance of equities may change in due course. One relevant change may occur if it appears that the Sandiganbayan cannot or will not issue its ruling within a reasonable period of time. Other changes could result when and if there is a ruling. If the Sandiganbayan rules that the Republic and the Commission have no right to the assets, their claims in some later interpleader suit would be less substantial than they are now. If the ruling is that the Republic and the Commission own the assets, then they may seek to enforce a judgment in our courts; or consent to become parties in an interpleader suit, where their claims could be considered; or file in some other forum if they can obtain jurisdiction over the relevant persons. We do note that if Merrill Lynch, or other parties, elect to commence further litigation in light of changed circumstances, it would not be necessary to file the new action in the District Court where this action arose, provided venue and jurisdictional requirements are satisfied elsewhere. The present action, however, may not proceed.
* * *
The judgment of the Court of Appeals for the Ninth Circuit is reversed, and the ease is remanded with instructions to order the District Court to dismiss the interpleader action.

It is so ordered.

APPENDIX
The Court of Appeals issued its decision before the 2007 amendments to Rule 19(b) became effective. See Merrill Lynch, Pierce, Fenner & Smith v. ENC Corp., 464 F. 3d 885, 891 (CA9 2006). The text of the Rule before those changes were adopted is as follows:
“Rule 19. Joinder of Persons Needed for Just Adjudication
“(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder *874 will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person’s absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person’s absence may (i) as a practical matter impair or impede the person’s ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.
“(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(l)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person’s absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person’s absence will be adequate; fourth, whether the plaintiff will have an adequate re.medy if the action is dismissed for nonjoinder.
*875 “(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as described in subdivision (a)(l)-(2) hereof who are not joined, and the reasons why they are not joined.
“(d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.” Fed. Rule Civ. Proc., 28 U. S. C.