NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KLAMATH CLAIMS COMMITTEE,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

---

2012-5130

---

Appeal from the United States Court of Federal Claims in No. 09-CV-00075, Judge Francis M. Allegra.

---

Decided: August 23, 2013

---

MATTHEW J. KELLY, Fredericks Peebles & Morgan, LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief was THOMAS W. FREDERICKS.

KATHERINE W. HAZARD, Attorney, Appellate Section, Environment & Natural Resources Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief was IGNACIA S. MORENO, Assistant Attorney General.

MELODY L. McCOY, Native American Rights Fund, Boulder, Colorado, argued for amicus curiae the Klamath Tribes.

———————————

Before PROST, BRYSON, and TARANTO, *Circuit Judges.*

PROST, *Circuit Judge*,

The Klamath Claims Committee ("KCC") appeals two judgments of the United States Court of Federal Claims. The first is the court's decision to dismiss the third and fourth claims of the KCC's first amended complaint pursuant to Rule 19 of the Court of Federal Claims. We affirm that judgment on the basis of the court's well-reasoned opinion. *See* FED. CIR. R. IOP 9 (10)(a) (We may affirm "on the basis of" a trial tribunal's opinion in a nonprecedential disposition.). The second is the court's dismissal of the KCC's motion seeking leave to amend its complaint for the second time. We also affirm that decision, but write briefly to address our reasoning for doing so.

I

The Klamath and Modoc Tribes and the Yahooskin Band of Snake Indians comprise one federally-recognized tribal government (the "Tribes").[1] Pursuant to its constitution and by-laws, the Tribes passed a resolution in 1952 to create the KCC.[2] At that time, the Tribes anticipated the termination of its federal recognition, which later

———————————

[1]  We use "Tribes" to refer to the single federally-recognized tribal entity.

[2]  Since its origin, the KCC has had different forms and names. Because the historical structure and previous names of the KCC are not relevant to our decision, we refer to the Klamath Claims Committee and its progeny as simply the "KCC."

occurred through the Klamath Termination Act of 1954.[3] The KCC's purpose was to represent the interests of the Tribes's final enrollees (the "1954 Enrollees") in claims against the United States filed before and after termination. A "reserve of necessary funds for prosecution" of such claims (the "Litigation Fund") was created in 1958 from monies due under the Termination Act. J.A. 734.[4]

In the years following its loss of federal recognition, the Tribes continued to exist as a self-governed organization and retained certain water and fishing rights. *See* 25 U.S.C. § 564r ("[The] termination shall not affect the power of the tribe to take any action under its constitution and bylaws that is consistent with [the Termination Act]"); 25 U.S.C. § 564m (stating that the Termination Act would not affect "any water rights" or "fishing rights or privileges"). Those rights were the foundation for several post-termination lawsuits that involved the Tribes and its members. As a result of those suits, the Ninth Circuit issued several opinions that detailed the scope of the Tribes's right to self-governance and to natural resources following termination. *See Kimball v. Callahan,* 493 F.2d 564 (9th Cir. 1974), *cert. denied,* 419 U.S. 1019 (1974) (explaining that the Tribes's hunting, fishing, and water rights survived the Termination Act); *Kimball v. Callahan,* 590 F.2d 768, 770-71 (9th Cir. 1979) (discussing which members of the Tribes could exercise tribal fishing rights after termination); *United States v. Adair,* 723 F.2d 1394, 1418 (9th Cir. 1983), *cert. denied,* 467 U.S. 1252

---

[3] Termination did not officially occur until 1961, when the United States had fulfilled all of its obligations under the Termination Act.

[4] The KCC refers to the fund as the "Litigation Trust Fund." The government asserts that the proper name is the "Litigation Expense Fund." We make no judgment on whether the funds are held in trust. We therefore use the term "Litigation Fund."

(1984) (addressing how the Tribes could effect a transfer of the hunting and fishing rights it retained after termination).

In 1986, the Tribes regained federal recognition under the Klamath Indian Tribe Restoration Act. After the federally-recognized sovereignty of the Tribes was restored, the KCC continued to exist. The Tribal Council (the elected governmental body for the Tribes) appears to have supervised the KCC's post-restoration activities, including the disbursement of money from the Litigation Fund. For example, in 1996, unused monies in the Litigation Fund were distributed by the KCC to the 1954 Enrollees and their descendants under the supervision of the Tribal Council. *See* J.A. 227-28 (resolution authorizing the Bureau of Indian Affairs to distribute money from the Litigation Fund to the 1954 Enrollees). And in 2008, the Tribal Council authorized payments from the Litigation Fund for litigation expenses incurred by the KCC. *See* J.A. 234-35 (resolution authorizing the distribution of money from the Litigation Fund to pay litigation costs).

II

The present suit began with a complaint filed by the KCC in February 2009. That complaint was amended once, as a matter of right, the following month.

The amended complaint included four claims. The first two alleged wrongdoings by the government related to funds payable to the Tribes and its members under Section 13 of the Termination Act. The third and fourth claims asserted a taking of private property and breach of fiduciary duty arising from the removal of the Chiloquin Dam—an act that allegedly affected water flow and fishing in waterways used by the Tribes.

Shortly after the amended complaint was filed, the government moved to dismiss all four claims. As part of its motion, the government argued that the KCC lacked standing to bring its claims. It asserted that the KCC did not have a legally cognizable interest in the Section 13

funds, the Chiloquin Dam, or the tribal water and fishing rights that were apparently affected by the dam's removal. According to the government, the KCC failed to show that "it, instead of the Tribes, [was] the proper entity to assert [its] claims." Def.'s Mot. to Dismiss 19 n.9, *Klamath Claims Comm. v. United States*, No. 09-cv-75, (Fed. Cl. May 7, 2009), ECF No. 9.

After briefing and a hearing on the motion to dismiss, the Court of Federal Claims ordered the KCC to file "an affidavit or resolution from an appropriate Tribal official or officials directly addressing [the KCC's] authority to file a claim in this matter." J.A. 328. In June 2010, the KCC submitted a letter from the Chairman of the Tribal Council that stated that neither he nor the Council was "in a position to lend support to litigation over which the Klamath Tribes have no control, particularly when the litigation may potentially affect Tribal rights." J.A. 331.

Following the KCC's inability to obtain the Tribal Council's approval, the Court of Federal Claims ruled in February 2011 that the Tribes was a required party under Rule 19.[5] *Klamath Claims Comm. v. United States*, 97 Fed. Cl. 203, 212-13 (Fed. Cl. 2011). The court reasoned, in part, that the Tribes "claimed an interest in the remaining subject matter of th[e] lawsuit" and "disposing of th[e] case in the Tribes' absence may, as a practical matter, impede the Tribes' ability to protect that interest." *Id.* at 213-14. Because it found the Tribes to be a necessary party to the litigation, the court formally invited it to intervene. *Id.* at 214.

In April 2011, the Tribes declined the court's invitation. It agreed that it had an interest in the suit and that

---

[5] The Court of Federal Claims also dismissed the first and second claims of the amended complaint on statute of limitation grounds. The KCC has not appealed the dismissal of those claims.

further adjudication may "impede [its] ability to protect that interest." J.A. 361. The Tribes also informed the court that the KCC "ha[d] no authority to speak for or represent the Tribes." *Id.*

In response to the Tribes's refusal to intervene, the court ordered briefing on whether the Tribes was an indispensable party. After the parties filed their briefs, the Tribes submitted an amicus brief to the court. In it, the Tribes "expressly reserve[d] its sovereign immunity from suit" and again asserted that the KCC had no authority to represent it. It also argued that the rights at issue "belong to the Tribes" and that the KCC was "acting hostilely to the Tribes, asserting control over tribal rights, and inviting th[e] Court to de-legitimize the Tribes." *Klamath Claims Comm. v. United States*, 106 Fed. Cl. 87, 92 (Fed. Cl. 2012) (internal quotation marks omitted).

In April 2012, months after the Rule 19 briefing concluded (and years after the suit began), the KCC filed a motion for leave to amend its complaint. That proposed second amended complaint included new facts related to the third and fourth claims of the first amended complaint and added three new claims against the government. All of those new claims related to the Litigation Fund. One demanded an order directing the government to pay the KCC's attorney from monies in the Fund. The other two requested damages for breach of trust and mismanagement of the Fund.

Shortly after the KCC filed its motion to amend, the Court of Federal Claims ruled that dismissal under Rule 19 was appropriate because the Tribes was an indispensable party for the third and fourth claims of the amended complaint. In addition to citing concerns and respect for the Tribes's sovereignty and the risk of "multiple and conflicting claims" against the government, the court reasoned that the resolution of the third and fourth claims in the amended complaint required adjudication of substantial tribal interests in water and fishing rights that "might be impaired by an adverse ruling." *Klamath*

*Claims Comm.*, 106 Fed. Cl. at 96. In light of its Rule 19 decision, the court dismissed the KCC's motion to amend as moot. *Id.* at 97 n.22.

The KCC filed a timely appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## III

The KCC raises two points on appeal. First, the KCC believes that the Court of Federal Claims erred in dismissing the third and fourth claims of its amended complaint under Rule 19. We see no such error and affirm the court's judgment on the basis of its well-reasoned opinion.[6] Second, the KCC argues that the court erroneously dismissed its motion to amend as moot. It asserts that the motion was not mooted by the Rule 19 dismissal of the third and fourth claims in its amended complaint.

We also affirm the dismissal of the KCC's motion to amend. Although the Court of Federal Claims characterized the motion to amend as "moot" in light of its ruling on the Rule 19 issue, we do not interpret the court's statement as holding that the dispute relating to the motion was moot in the formal sense, but rather as a statement that it was unnecessary for the court to address that issue. Because, given the facts here, the Tribes was unquestionably an indispensable party under Rule 19 for all of the new claims the KCC desired to add in its proposed second amended complaint, we uphold the denial of that motion on the ground that the amendment would have been futile in light of the Rule 19 problem that would have required dismissal of those claims.[7] *See*

---

[6]    None of the new facts in the proposed second amended complaint present any basis for reversing the Rule 19 dismissal of the third and fourth claims of the first amended complaint.

[7]    Because of the facts here, we do not decide whether the Rule 19 dismissal of some of the KCC's claims itself

*A123 Sys., Inc. v. Hydro-Quebec*, 626 F.3d 1213, 1221 (Fed. Cir. 2010) (reviewing de novo a Rule 19 issue "in the first instance on appeal" based on facts in the record); *Cultor Corp. v. A.E. Staley Mfg. Co.*, 224 F.3d 1328, 1332-33 (Fed. Cir. 2000) (affirming a district court's denial of a motion to amend on the basis that any amendment would have been futile).

Rule 19 explains that a party may be a "required" party if it "claims an interest relating to the subject of the action and is so situated that the disposition of the action in [its] absence may . . . as a practical matter impair or impede [its] ability to protect that interest."   RCFC 19(a)(1)(B).  If joinder of a required party is not feasible, the Court of Federal Claims must determine if the absent party is an indispensable one without whom the action should not proceed.  RCFC 19(b).  That analysis generally turns on several factors specified in the rule, including "the extent to which a judgment rendered in the [required party's] absence might prejudice that [party]"; "the extent to which any prejudice could be lessened or avoided"; "whether a judgment rendered in the [required party's] absence would be adequate"; and "whether the plaintiff would have an adequate remedy if the action were dismissed."  RCFC 19(b)(1)-(4).

Applying those Rule 19 factors here, we hold that the Tribes is an indispensable party for the claims the KCC sought to add in its motion to amend.  The Tribes is clearly a required party for those claims, and the first Rule 19 factor weighs quite heavily in favor of dismissal.

---

required dismissal of the whole action.  *See, e.g.*, RCFC 19 ("If a person who is required to be joined . . . cannot be joined, the court must determine whether . . . the *action* should proceed . . . or should be dismissed) (emphasis added); *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1343 (11th Cir. 2011) ("If the party is indispensable, then we must dismiss the entire case.").

The resolution of the KCC's new claims would necessarily implicate significant sovereign interests of the Tribes and risk substantial prejudice to it. As the Court of Federal Claims recognized, adjudication of claims by the KCC would require the court to resolve whether the KCC has standing. *Klamath Claims Comm.*, 97 Fed. Cl. at 212. For the new claims, the standing inquiry would compel the court to determine which past and current members of the Tribes the KCC represents and whether the KCC has the authority to represent those individuals' interest in the Litigation Fund. Those determinations would require the court to decide the extent of the KCC's power and authority pursuant to, not only several acts of Congress, but also the legislative acts, laws, and constitution of the Tribes. Any such decision could have a significant prejudicial effect on the Tribes's sovereign power of self-governance and its ability to effectively protect its interests—and its members' interests—in the Litigation Fund.

That risk of substantial prejudice has been made clear by events that transpired after the Court of Federal Claims issued its decision. In July 2012, the Tribes formally dissolved the KCC pursuant to its constitution and created a new committee to represent the 1954 Enrollees' interests in the Litigation Fund (the "1954 Final Enrollees Committee"). Resp't's Addendum 12-14.[8] That

---

[8] The government appended to its brief pertinent resolutions of the Tribes's government that were passed after the Court of Federal Claims issued its decision here. In its reply brief, the KCC moved to strike those documents from the government's brief and asked us not to take judicial notice of them. The KCC's motion to strike is denied. We take judicial notice of the resolutions the government appended to its brief, which are publically available records of the Tribes's government whose accuracy cannot be reasonably questioned. *See Massachusetts v. Westcott*, 431 U.S. 322, 323 n.2 (1977) (explaining that government records may be "judicially noticed"); The

new committee held an open meeting in August 2012 at which an almost unanimous number of the present 1954 Enrollees (or their representative heirs) voted to distribute all of the money in the Litigation Fund to themselves. *Id.* at 16. In November 2012, that vote was ratified by the Tribes, and the Tribal Council was directed to distribute the funds. *Id.*

The KCC's standing directly depends upon its authority to bring claims on behalf of the 1954 Enrollees that accord with the interests of those individuals. It is now apparent that the same sovereign that created the KCC has dissolved it and formed a new government committee to represent the interests of the 1954 Enrollees in the Litigation Fund. And, even though the 1954 Enrollees have voted to disburse all the monies in the Fund to themselves, the KCC demands as relief under its first new claim that proceeds from the Fund be paid to *its attorneys*—not the 1954 Enrollees.[9] Thus, there are significant questions here regarding the KCC's authority to bring its new claims and the true identity of the tribal members (and their interests) that the KCC represents. To determine if the KCC has standing, the Court of Federal Claims would be forced to resolve those issues by, in large part, interpreting the Tribes's laws and constitution. Such a decision could undoubtedly impinge upon the Tribes's sovereignty and substantially prejudice its ability

---

Klamath Tribes General Council Resolution #2012-003, *available at* http://www.klamathtribes.org/claims/CC_2012-003%20GCR%20Litigation%20 Fund.pdf; The Klamath Tribes General Council Resolution #2012-002, *available at* http://www.klamathtribes .org/claims/Z_2012%2007%2014%20Resolution%202012% 20002.pdf.

[9]   The existence of competing claims to the same pot of money is a classic reason for dismissing under Rule 19 when one of the claimants is not a party.

to self-govern, regulate the activities of its agents under its laws, and protect the interests of the 1954 Enrollees in the Litigation Fund—which it appears to have historically done without objection by the KCC.[10] Thus, the first Rule 19 factor overwhelmingly favors dismissal. *Accord Republic of Philippines v. Pimentel*, 553 U.S. 851, 869 (2008) (finding error in a court's analysis of the first Rule 19(b) factor by "not accord[ing] proper weight to the compelling claim of sovereign immunity").

The remaining Rule 19 factors also point to dismissal. Although the KCC might be able to obtain adequate relief in absence of the Tribes, there is no practical way for the court to lessen the potential prejudice to the Tribes by shaping the relief it grants or including protective provisions in its judgment. Furthermore, the KCC is not without remedy if its new claims are dismissed: it is free to seek a resolution or declaration under tribal law regarding its right to represent the 1954 Enrollees and then refile its suit if successful.

---

[10] The KCC believes that it has authority to bring its claims solely pursuant to the Termination Act. But that view is overly simplistic and discounts the relevance of tribal law here. We cannot simply ignore that the sovereign which created and empowered the KCC under its laws has now dissolved the KCC using that very same power and created a new government committee to represent the interests of the 1954 Enrollees in the Litigation Fund. It seems axiomatic that the sovereign Tribes may choose which of its branches or agents can bring suit on its behalf to vindicate its rights or the rights of its members. If certain members of the Tribes disagree with that choice, they should seek relief in tribal court or through the Tribal Council. Federal courts are generally not the proper forum to settle such disputes, especially in absence of a relevant sovereign tribe. *See Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 920-21 (9th Cir. 2008).

Therefore, applying the standards of Rule 19 to the particular facts of this case, we conclude that the Tribes are clearly a required and an indispensable party to the claims the KCC sought to add in its motion to amend. Adjudicating those claims in the absence of the Tribes would be an abuse of discretion. Accordingly, we affirm the dismissal of the KCC's motion to amend along with the Rule 19 dismissal of the third and fourth claims of the KCC's amended complaint.

**AFFIRMED**