BELLEFONTE REINSURANCE COMPANY, Mission Insurance Company, the Insurance Company of the State of Pennsylvania, North American Company for Property and Casualty Insurance and Constitution Reinsurance Corporation, Plaintiffs,

v.

AETNA CASUALTY AND SURETY COMPANY, Defendant.

No. 83 Civ. 8613(RJW).

United States District Court, S.D. New York.

July 5, 1984.

Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, New York City, for plaintiffs; C. Raymond Nelson, Stacey E. Athans, New York City, of counsel.

Kornstein Meister & Veisz, New York City, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant; Daniel J. Kornstein, Howard S. Veisz, New York City and John G. Harkins, Jr., Marion K. Littman, Robert L. Hickok, James Lawless IV, Philadelphia, Pa., of counsel.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiffs, various reinsurers of defendant, Aetna Casualty and Surety Company ("Aetna"), instituted this action under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (the "Act"),[1] for a declaratory judgment determining the rights and obligations of the parties pursuant to a series of reinsurance contracts. Aetna moves to dismiss the amended complaint pursuant to Rule 12(b), Fed.R.Civ.P., on the ground that it fails to state a claim upon which relief can be granted.[2] Aetna argues that

---

1. That section provides:

§ 2201. Creation of remedy

In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954 or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

2. Although the instant motion appears to be grounded in Rule 12(b)(6), Fed.R.Civ.P., relating to dismissal of a claim for "failure to state a claim upon which relief can be granted," it is more appropriately premised on Rule 12(b)(1), Fed.R.Civ.P., dealing with "lack of jurisdiction over the subject matter." Aetna's argument that the instant action does not present an "actual controversy" within the meaning of the Act amounts to the contention that no federal juris-

the instant action does not present an "actual controversy" between the parties within the meaning of the Act, and that therefore this case is not properly within the jurisdiction of this Court. For the reasons hereinafter stated, Aetna's motion is granted, and the action is dismissed.

## BACKGROUND

In or before 1971, and continuing at least until 1977, Aetna issued policies of primary and excess liability insurance to A.H. Robins Company, Inc. ("Robins") insuring Robins against the risk of certain liability arising out of the use of the products manufactured, sold or distributed by Robins, including an intrauterine contraceptive device known as the Dalkon Shield. Individual policies were issued for consecutive one-year terms throughout this period with excess coverage in the amount of $30,000,000 for the years 1971 and 1972 and $50,000,000, thereafter, per occurrence and in the aggregate, attaching at the $5,000,000 limit of the underlying primary policy.

Aetna elected to spread the risks insured under its excess policies by ceding such risks to reinsurers who accepted liability for specified percentages of the risks with various layers of reinsurance participation. Each layer, in turn, was divided into shares of differing sizes. Plaintiffs were among these reinsurers, and issued to Aetna written certificates of facultative reinsurance. Each reinsurer participated in this reinsurance scheme in unique patterns and amounts—reinsuring Aetna's excess insurance risks in some years but not in others, on only certain layers, and for only certain percentages.

At various times commencing in 1971 and continuing to the present, numerous claims and lawsuits were filed against Robins to recover damages for personal injuries allegedly resulting from the use of the Dalkon Shield. Aetna undertook to defend and indemnify Robins under the insurance policies in effect for payments made upon judgment or in settlement of these lawsuits, assigning the date of loss to the policy in effect on the date that the injury became manifest, and charging defense costs and claims expenses against the limits of the applicable policy.

In or about 1977, coverage under the then existing insurance scheme was modified with respect to the Dalkon Shield.[3] At that time, Robins objected to Aetna's assignment of the date of loss under the "manifestation theory" of occurrence as well as the allocation of defense costs and claims expenses as applied by Aetna. Robins demanded that such claims and suits be administered on an "exposure theory" of occurrence and that all defense costs and claims expenses be assumed by Aetna in addition to the liability limitations provided in the applicable policies of insurance. Both of these demands could significantly increase Aetna's liability under the insurance policies. Aetna refused to comply with Robins' demands, and continued both to pay the relevant costs and expenses and to include them in determining whether the limit of Aetna's liability under the insurance policies have been exhausted.

In 1979, Robins instituted an action against Aetna in the Circuit Court of the City of Richmond, Virginia, seeking a declaratory judgment construing various agreements and insurance policies between Robins and Aetna in a manner consistent with the demands described above. *See A.H. Robins Co., Inc. v. Aetna Casualty & Sur. Co.*, No. G–3321–3 (the "Virginia liti-

diction exists in this case. *See* U.S. CONST. ART. III, § 2, cl. 1.; *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937), *reh'g denied*, 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937); *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir.1979) ("We begin our inquiry by noting that the 'actual controversy' requirement of the [Act] is a jurisdictional prerequisite of constitutional dimension"). *See generally Genesee Brewing Co., Inc. v. Village of Sodus Point*, 733 F.2d 258 at 259 (2d Cir.1984).

3. Effective March 1, 1977, excess coverage with respect to the Dalkon Shield was restricted to $5,000,000, and thereafter the Dalkon Shield was excluded from coverage pursuant to an endorsement issued in connection with a renewal of the primary and excess policies.

gation"). This action is still pending although several attempts at settlement have apparently been undertaken.[4]

According to plaintiffs, from early 1982 until the present, Aetna has solicited its reinsurers to consent to various proposals of settlement with Robins, and has expressed the intention to sue those reinsurers that do not consent and that fail to pay their respective shares of any increased costs and expenses resulting from such a settlement. Plaintiffs have resisted such attempts at settlement by Aetna. They contend that the language of the individual facultative reinsurance certificates as well as certain correspondence between plaintiffs and their reinsurance intermediaries indicate that it had always been intended that the costs of defending and settling Robins' product liability suits would be included in determining whether the liability limits of the insurance policies had been exhausted. Plaintiffs assert that the reinsurance certificates were issued and the reinsurance premiums computed on the basis of this understanding.

Plaintiffs fear that an agreement between Aetna and Robins settling the Virginia litigation that differed in its terms from plaintiffs' understanding of their reinsurance obligations could substantially increase plaintiffs' reinsurance risks. On December 5, 1983, plaintiffs commenced the instant action, apprehending that Aetna would settle the Virginia litigation with Robins despite plaintiffs' opposition to such efforts, and that Aetna would then sue the reinsurers that refused to pay over any

additional reinsurance liability created or reaffirmed by such settlement. The amended complaint seeks judgment against Aetna "determining the rights and obligations of the parties under facultative reinsurance of defendant by plaintiffs in respect of the risks of A.H. Robins Company, Inc.," and declaring that there is no obligation on the part of plaintiffs to reimburse Aetna in respect of any defense costs and claims expenses or other sums in addition to the dollar amounts specified as the liability limits of the policies of insurance reinsured by the various certificates of facultative reinsurance.

## DISCUSSION

Aetna moves to dismiss the instant action, arguing that it is not justiciable in federal court because it fails to present an "actual controversy" necessary for the issuance of declaratory relief. *See* 28 U.S.C. § 2201. A federal court's authority to grant such relief under the Act "extends to the article III limits on the court's power to adjudicate disputes." *AC and S, Inc. v. Aetna Casualty & Sur. Co.,* 666 F.2d 819, 822 (3d Cir.1981).[5] Federal courts are precluded by Article III from rendering advisory opinions. Rather, for adjudication of issues in federal court, "concrete legal issues, presented in actual cases, not abstractions are requisite. This is as true of declaratory judgments as any other field." *Golden v. Zwickler, supra,* 394 U.S. at 108, 89 S.Ct. at 959 *quoting United Pub. Workers of Am. v. Mitchell, supra,* 330 U.S. at 89, 67 S.Ct. at 564.[6] A

**4.** There is considerable disagreement between plaintiffs and Aetna as to whether Aetna and Robins had agreed in principle to a negotiated settlement of the Virginia litigation. It does appear, however, that on February 10, 1983, Aetna held a meeting with the participating reinsurers to solicit their views with respect to a proposal of settlement. Plaintiffs and the other reinsurers refused to consent to this proposal, contending that its provisions were contrary both to the terms of the various reinsurance certificates and to their negotiated understandings of the reinsurance risks.

**5.** *See also Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 959, 22 L.Ed.2d 113 (1969); *United*

*Pub. Workers of Am. v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 91 L.Ed. 754 (1947); *Maryland Casualty Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 272, 61 S.Ct. 510, 511, 85 L.Ed. 826 (1941); *Aetna Life Ins. Co. v. Haworth, supra,* 300 U.S. at 239–40, 57 S.Ct. at 463.

**6.** *See also Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 297–98, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979); *New York City Transit Auth. v. Beazer,* 440 U.S. 568, 582 n. 22, 99 S.Ct. 1355, 1364 n. 22, 59 L.Ed.2d 587 (1979); *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Lake Carriers' Ass'n v. MacMullan,* 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972); *Alabama State*

justiciable controversy, as distinguished from a dispute that is hypothetical or abstract, "must be definite and concrete, touching the legal relations of parties having adverse legal interests.... It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth, supra,* 300 U.S. at 240–41, 57 S.Ct. at 263–64. This standard was elaborated upon by the Supreme Court in *Maryland Casualty Co. v. Pac. Coal & Oil Co., supra,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826, as follows:

> The difference between an abstract question and a "controversy" contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–242, 57 S.Ct. 461, 463–64, 81 L.Ed. 617.

*Id.* at 273, 61 S.Ct. at 512. *See generally* 10A C. Wright & A. Miller, *Federal Practice and Procedure,* § 2757 (2d ed. 1983). In short, a controversy is justiciable under the Act only if it presents the plaintiff with a present danger or dilemma, and not a danger or dilemma which is contingent upon the happening of certain future or hypothetical events. *See, e.g., Golden v. Federation of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945); *Coffman v. Breeze Corp., Inc.,* 323 U.S. 316, 324, 65 S.Ct. 298, 302, 89 L.Ed. 264 (1945); *Altvater v. Freeman,* 319 U.S. 359, 363, 63 S.Ct. 1115, 1117, 87 L.Ed. 1450 (1943); *United States v. Appalachian Elec. Power Co.,* 311 U.S. 377, 423, 61 S.Ct. 291, 306, 85 L.Ed. 243 (1940) ("The Courts deal with concrete legal issues, presented in actual cases, not abstractions").

*Zwickler, supra,* 394 U.S. at 108, 89 S.Ct. at 959.[7]

In the instant case, plaintiffs seek a declaratory judgment with respect to their potential liability to reimburse Aetna for expenses and costs in excess of the limits established by the certificates of facultative insurance issued by plaintiffs to Aetna. Such liability, however, depends upon a determination of Aetna's liability to reimburse Robins for such costs and expenses pursuant to the primary and excess policies of insurance issued by Aetna. This question is centrally at issue in the Virginia litigation, and remains at present unresolved. No party either to the instant action or the Virginia litigation has paid or has even been adjudged liable to pay the defense costs and claims expenses in excess of the various policy limits. Whether, in the future, such sums will be paid or become legally payable it is, on this record, impossible to determine. Thus, prior to a determination of liability in the Virginia litigation, and prior to an adjudication of the grounds upon which such liability would be imposed, any decision by this Court in this case would be highly speculative and theoretical.

Additionally, an adjudication of the issues in the instant case by this Court at this time could readily be rendered moot by the eventual outcome of the Virginia litigation. If the Virginia court determines that Aetna is not liable to reimburse Robins for claims expenses and defense costs in excess of the relevant policy limits, then Aetna could make no demand for additional payments from its reinsurers. Moreover, even if the Virginia court were to hold Aetna liable for such excess costs and expenses, Aetna may nevertheless not demand additional payments from some or all of the plaintiffs, since in certain policy

---

7. *See also Karlen v. New York University,* 464 F.Supp. 704, 708 (S.D.N.Y.1979); *M & M Transp. Co. v. U.S. Indus., Inc.,* 416 F.Supp. 865, 870 (S.D.N.Y.1976). *See generally Bettis v. Patterson-Ballagh Corp.,* 16 F.Supp. 455, 461–62 (S.D. Cal.1936) *appeal dismissed,* 97 F.2d 992 (1938) ("A person merely apprehending or fearing the assertion of rights against him by another cannot bring him into court and compel him to litigate").

years some of the layers of reinsurance may not have been reached.

The court in the Virginia litigation is also being asked to select the applicable theory for determining when an injury has "occurred" for purposes of triggering Aetna's insurance obligations. The theory of occurrence adopted by the Virginia court will determine which year's insurance coverage is applicable to each injury and will thus identify the reinsurance coverage applicable to each claim. The resolution of each of these issues will affect the existence and extent of any dispute between Aetna and plaintiffs with respect to payments in excess of the reinsurance certificate limits. Consequently, until such time as these underlying issues are resolved in the Virginia litigation, the possibility and scope of plaintiffs' liability to Aetna remain very much in doubt, and there is no "actual controversy" within the meaning of the Act in the instant case.[8]

This Court must heed the oft recited admonition that "it is not the function of a United States District Court to sit in judgment of these nice and intriguing questions which today may readily be imagined, but may never in fact come to pass." *American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mut. Casualty Ins. Co.*, 280 F.2d 453, 461 (5th Cir. 1960). *See also MacMillan-Bloedel, Inc. v. Firemen's Ins. Co. of Newark*, 558 F.Supp. 596, 599 (S.D.Ala.1983); *M & M Transp.*

*Co. v. U.S. Indus., Inc., supra*, 416 F.Supp. at 870. Plaintiffs simply may not litigate in this Court issues which may never arise in fact or affect them to their disadvantage. To speculate as to a possible resolution of the questions at issue in the Virginia litigation, and to seek a declaratory judgment based on such hypothetical results is actually to ask the opinion of this Court with reference to a situation that may never arise. The Constitution, however, precludes this Court from joining in such speculation.

■ The Court is aware that the Act meets a real need and should be liberally construed to accomplish the purpose intended, i.e., to afford a speedy and inexpensive method of adjudicating legal disputes ... and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships.

*Aetna Casualty & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir.1937); *See also Broadview Chemical Corp. v. Loctite Corp.*, 474 F.2d 1391, 1393 (2d Cir.1973). However, plaintiff has failed to demonstrate that a declaratory judgment in this case would effectuate these intended purposes.[9] As the Court has explained, the uncertainty and insecurity that cloud the jural relationships between Aetna and its various reinsurers can be removed only

---

**8.** This analysis is similarly controlling if the Virginia litigation is resolved by means of a settlement agreement between Aetna and Robins. If under such agreement Aetna is not required to pay defense costs and claims expenses in excess of the policy limits, then no demand for additional payments could be made upon plaintiffs. However, even if the settlement agreement does require Aetna to pay such costs and expenses, the specific provisions of that agreement will determine the possibility and shape the nature of any demand by Aetna for reimbursement from some or all of the plaintiffs.

**9.** Plaintiffs' reliance on *Keene Corp. v. Insurance Co. of No. Am.*, 667 F.2d 1034 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875 (1982), *reh'g. denied*, 456 U.S. 951, 102 S.Ct. 2024, 72 L.Ed.2d 476 (1982) and *AC and S, Inc. v. Aetna Casualty & Sur. Co., supra*, 666 F.2d 819 is misplaced. In both of those

cases, the insured sued its liability insurers because they had refused to defend lawsuits in which the insured faced potential liability for asbestos-related diseases. In both cases, the appellate courts held that the insured's claims for declaratory relief presented an "actual controversy" and were justiciable in federal court. Unlike the instant case, both *AC and S* and *Keene Corp.* involved situations in which the harm to the plaintiff had already arisen.

In *AC and S, Inc. v. Aetna Casualty & Sur. Co., supra*, 666 F.2d 819, the plaintiff had been named as a co-defendant in at least 800 lawsuits seeking to recover damages for personal injuries caused by exposure to asbestos. Although the plaintiff was covered by comprehensive liability insurance policies issued by the defendants, the insurers refused to defend AC & S because of a disagreement among the litigants as to their respective rights and duties under the insurance policies. Plaintiff was therefore

after the resolution of the underlying dispute between Aetna and Robins in the Virginia litigation. Thus, even if it were constitutionally permissible for this Court to adjudicate plaintiffs' claims in the instant action, and regardless of the ultimate determination of such issues, this Court simply could not settle all the legal issues between, determine all the legal rights among, and dispel all the uncertainties and insecurities of the parties in this and the Virginia lawsuits.

■ Plaintiffs' argument that declaratory relief is necessary in the instant action to prevent them from waiving their contract defenses against Aetna's potential demands for reimbursement in excess of the limits established in the reinsurance certificates is similarly unpersuasive. As one commentator has explained:

. [T]he requirements of justiciability are not met if the complainant merely alleges that he "is at a loss to know what course to pursue." The Act is not designed to eliminate the function of attorneys. There must be adverse parties with adverse legal interests.

6A J. Moore, *Moore's Federal Practice* ¶ 57.12, at 57–111 (2d ed. 1983) (footnotes omitted), *quoting Duart Mfg. Co. v. Philad Co.*, 30 F.Supp. 777, 780 (D.Del.1939). *See also M & M Transp. Co. v. U.S. Indus., Inc., supra,* 416 F.Supp. at 871.

## CONCLUSION

In summary, plaintiffs have failed to establish that they are confronted with a

present and unconditional danger or dilemma emanating from a real and substantial dispute between the parties. The instant action, therefore, does not present an "actual controversy" within the meaning of the Act, and is not currently justiciable in federal court. Accordingly, Aetna's motion to dismiss the amended complaint pursuant to Rule 12(b), Fed.R.Civ.P., is granted, and the action is dismissed without prejudice.

It is so ordered.

"forced to defend underlying cases and pay costs and face liabilities that would otherwise be incurred by its insurers." *Id.* at 821.

Similarly, in *Keene Corp. v. Insurance Co. of N. Am. supra,* 667 F.2d 1034, the plaintiff had been named as a co-defendant in over 6,000 asbestos-related lawsuits. Although Keene Corp. was protected by a comprehensive general liability insurance scheme arranged with the defendant insurers, the defendants either denied all liability or accepted only partial responsibility. As the court explained:

This suit by Keene does not present a hypothetical set of facts. Keene has been, and will continue to be, sued for injuries that result from the use of its asbestos products. For each of these suits—past, present, and future—the rights and obligations of Keene and

its insurers must be resolved. There can be no question that the interpretation of the contracts at issue in this case presents a "real and substantial controversy" that can be specifically resolved by a decision in this case. *Id.* at 1040.

In contrast, in the instant case, plaintiffs have yet to suffer any remediable harm, nor is it clear that they ever will. Aetna has not demanded that plaintiffs make additional payments beyond those required under plaintiffs' interpretation of their reinsurance obligations. In fact, although Aetna has continued to pay the costs of defending and settling Robins' product liability cases, it has included these costs in determining whether the limits of its insurance obligations have been exhausted, the exact relief plaintiffs seek in this action.