**FEDERAL INSURANCE COMPANY,**
**Plaintiff,**

v.

**SAFENET, INC., Carole Argo, and**
**Anthony Caputo, Defendants.**

**No. 09 Civ. 7863 NRB.**

United States District Court,
S.D. New York.

Dec. 7, 2010.

---

Michael F. Perlis, Stroock & Stroock & Lavan, LLP, Los Angeles, CA, for Plaintiff.

Andrew Hunter Reynard, Sullivan & Cromwell, LLP, New York, NY, for Defendant SafeNet, Inc.

Benjamin C. Brown, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, DC, Paul Adam Engelmayer, Wilmer, Cutler, Hale & Dorr, L.L.P., New York, NY, for Defendant Carole Argo.

Joshua P. Wilson, Arnold & Porter, LLP, Washington, DC, for Defendant Anthony Caputo.

## MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Federal Insurance Company ("plaintiff") brings this action for declaratory relief and for the rescission of certain excess insurance contracts. Defendants SafeNet, Inc. ("SafeNet"), Carole Argo ("Argo"), and Anthony Caputo ("Caputo," and together with SafeNet and Argo, "defendants") move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), on the grounds that plaintiff's claims are

unripe because SafeNet has not exhausted its primary insurance policies, and pursuant to Federal Rule of Civil Procedure 12(b)(7), on the grounds that plaintiff has failed to join certain necessary parties whose joinder would destroy diversity. In the alternative, defendants move to stay this action pending the conclusion of a class action lawsuit against SafeNet and certain SafeNet personnel.

For the reasons discussed herein, defendants' motion is denied.

### BACKGROUND

During the time periods relevant to this action, SafeNet was a public company that provided information security technology to public and private customers.[1] (Reynard Decl. Ex. 7.) Argo was the Vice President and Chief Financial Officer of SafeNet and Caputo was SafeNet's Chairman and Chief Executive Officer. (Compl. ¶¶ 9, 11.)

From March 2005 to March 2006, SafeNet had two layers of executive and organization liability insurance. (Compl. ¶ 17.) National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") provided the primary layer of insurance, which covered up to $10 million in losses. (*Id.*) Plaintiff provided the second, or excess, layer of insurance coverage to SafeNet. (*Id.*) The excess policy provided an additional $5 million in coverage, which would attach only after National Union "paid in legal currency the full amount of the Underlying Limit" for the policy period. (Compl. ¶¶ 17–18.)

From March 2006 to March 2007, SafeNet had similar executive and organization liability insurance coverage. (Compl. ¶ 19.) For this subsequent period, National Union provided $10 million in primary insurance coverage and plaintiff provided $10 million in excess insurance coverage. (*Id.*)

In the present action, plaintiff seeks a declaration that the two excess insurance policies (the "Excess Policies") are void, other declarations regarding the Excess Policies, and the rescission of the Excess Policies.

### A. The Excess Policies

By way of background, the Excess Policies provide multiple types of coverage, three of which appear to be relevant to this dispute. First, the Excess Policies cover losses incurred by SafeNet executives or employees where: (i) a claim has been made against the SafeNet executive or employee for certain Wrongful Acts;[2] and (ii) SafeNet did not indemnify the executive or employee for the loss. (Reynard Decl. Ex. 2 §§ 1, 2; Ex. 3 §§ 1, 2.)[3] Second, the Excess Policies cover SafeNet's losses that arise from a securities claim made against SafeNet. (*Id.*) And third, the Excess Policies cover SafeNet's losses where: (i) a claim has been made against a SafeNet executive or employee for certain Wrongful Acts; and (ii) SafeN-

---

1. Unless otherwise stated, the following facts are drawn from the complaint ("Compl."), the underlying contracts, or from public filings attached to the Declaration of Andrew H. Reynard in Support of Defendants' Motion to Dismiss Federal Insurance Company's Complaint or, In the Alternative, To Stay the Action ("Reynard Decl.").

2. Capitalized terms not defined herein are defined in the underlying contracts.

3. The Excess Policies expressly incorporate the terms and conditions of the National Union primary policies. (Reynard Decl. Ex. 4 § 1 ("Coverage hereunder shall [ ] apply in conformance with the terms and conditions of the Primary [National Union] Policy ... except as otherwise provided herein."); Ex. 5 § 1 (same).)

et indemnified the executive or employee for the loss. (*Id.*)

The Excess Policies contain a representation that plaintiff has relied on the veracity of the information provided to it by SafeNet. Specifically, Endorsement Number 4 provides that:

> [i]n granting coverage under this policy, it is agreed that the Insurer has relied upon the statements, warranties and representations contained in the Application as being accurate and complete. All such statements, warranties, and representations are the basis for the policy and are material to the risks assumed by the Insurer.

(Compl. ¶ 22.) The Excess Policies define the term "Application" to include SafeNet's written application, the documents cited therein, and public documents that SafeNet filed with the Securities and Exchange Commission or similar regulatory agencies prior to the date of the policy. (Compl. ¶ 21; Reynard Decl. Exs. 2, 3 (Endorsement No. 16).)

Additionally, the Excess Policies define the circumstances under which the policies would be deemed void and/or losses would be excluded from coverage. For example, Endorsement Number 4 provides that:

> in the event the particulars and statements contained in the Application are not accurate and complete, then this Policy shall be void as to any Insured who knew as of the inception date of the Policy Period of the facts that were not accurately and completely disclosed in the Application ... and as to any Insured to whom such knowledge is imputed.

(Compl. ¶ 23; Reynard Decl. Exs. 2, 3.)

Endorsement Number 4 also provides that when a past or present Chief Executive Officer or Chief Financial Officer has knowledge that facts were not accurately and completely disclosed, such knowledge is imputed to all Insureds (*i.e.*, to SafeNet, to its executives, and to its employees). (Compl. ¶ 24.) Notwithstanding these imputation provisions, the Excess Policies will cover the losses of any Insured to whom knowledge is imputed, provided that the Insured "did not have knowledge of the facts that were not accurately and completely disclosed." (Compl. ¶ 25.)

Finally, the Excess Policies contain various exclusions, including exclusions that may apply when an Insured has engaged in self-dealing, deliberate criminal conduct, or deliberate fraudulent conduct. (Compl. ¶ 27.)

## B. Criminal and Enforcement Actions

Beginning in 2006, SafeNet faced a torrent of legal troubles relating to stock options backdating. (Compl. ¶¶ 20, 30–31.) On July 31, 2006, SafeNet filed a Form 8–K, which disclosed that SafeNet had formed a special committee to investigate its stock option granting practices. (Compl. ¶ 30.) SafeNet also disclosed that this committee had concluded that compensation expenses were improperly recorded from 2000 through 2005. (*Id.*) As a result, SafeNet later reported, it would restate its financial statements from 2000 through March 2006. (*Id.*)

In July 2007, the United States Attorney's Office for the Southern District of New York filed a criminal complaint against Argo, SafeNet's Chief Financial Officer. (Compl. ¶ 31.) In 2008, Argo pleaded guilty to securities fraud in connection with SafeNet's stock option backdating practices. (*Id.*) Argo also admitted that she caused SafeNet to report materially false and misleading financial results from 2000 through mid–2006. (*Id.*)

Soon after the criminal case commenced, the Securities and Exchange Commission

("SEC") filed a civil enforcement action against Argo for the same conduct. (*Id.*) Argo later consented to judgment against her in the enforcement action and agreed to pay civil penalties. *SEC v. Argo*, No. 07 Civ. 1397(RWR) (D.D.C. Sept. 24, 2008).[4]

## C. Shareholder Litigation

Shareholder litigation followed shortly thereafter. (Compl. ¶ 20.) Specifically, in August 2006, a securities class action was filed against SafeNet, Argo, Caputo, and other SafeNet personnel. *Police and Fire Retirement System of the City of Detroit et al. v. SafeNet, Inc. et al.*, No. 06 Civ. 5797(PAC), 2006 WL 2414344 (S.D.N.Y. Aug. 1, 2006).

In September 2010, after four years of litigation, the parties in the shareholder class action filed a motion for preliminary approval of a $25 million settlement. On October 7, 2010, Judge Crotty preliminarily approved the settlement. A settlement hearing is presently scheduled for December 20, 2010.

## D. Procedural History

Plaintiff filed its complaint in September 2009, after the enforcement·actions had been resolved but while the shareholder class action was still pending. Plaintiff originally named eleven defendants in this action: SafeNet, Argo, Caputo, and eight other SafeNet officers and directors. However, on January 29, 2010, plaintiff voluntarily dismissed all defendants other than SafeNet, Argo, and Caputo (the "Dis-

missed Defendants"). National Union is not a party to this lawsuit.

After the initial conference, the parties attempted to negotiate an agreement to stay this case pending the outcome of the shareholder class action. (D. Mem. at 10–11.) However, the parties were unable to reach an agreement and, on March 2, 2010, defendants filed this motion to dismiss.[5] (D. Mem. at 11.)

Defendants move to dismiss on two principal grounds. First, defendants argue that the case must be dismissed because both National Union and the Dismissed Defendants are necessary parties, and if National Union were joined as a plaintiff and the Dismissed Defendants were joined, diversity would be destroyed. (D. Mem. 18–24.) Second, defendants argue that this case is unripe for adjudication because: (i) SafeNet's coverage under the Excess Policies has not attached and will not attach until the National Union policies have been exhausted; and (ii) Argo's and Caputo's coverage under the Excess Policies is limited to losses that are not indemnified and SafeNet has made no determinations regarding indemnification. (D. Mem. 12–15.) Defendants argue that, even if the case is ripe, we should nevertheless abstain from hearing the case. (D. Mem. 15–18.)

In the alternative, defendants argue that if we deny the motion to dismiss, we should stay the case pending resolution of the shareholder class action.

On October 27, 2010, this Court sent a letter to all parties, which directed their

---

**4.** In 2009, the SEC brought another enforcement action against SafeNet, Caputo, and other SafeNet employees and executives for conduct relating to stock options backdating and improper revenue recognition. *SEC v. SafeNet, Inc. et al.*, No. 09–2117, 2009 WL 4072969 (D.D.C. Nov. 12, 2009). Various defendants consented to judgment against them and

agreed to pay civil penalties. Plaintiff has not included allegations about this subsequent enforcement action in its complaint.

**5.** This case was originally assigned to Judge Chin. On May 12, 2010, after the motion was fully briefed, this case was reassigned to this Court.

attention to the $25 million settlement in the shareholder class action. This Court also informed the parties that, following a preliminary analysis of the arguments raised in the motion, we were inclined to deny the motion. This Court solicited responses from the parties. In their responses, the parties made additional arguments and informed the Court that SafeNet had not given notice of the settlement to either plaintiff or National Union.[6]

## DISCUSSION

### I. Motion to Dismiss Pursuant to Federal Rule 12(b)(7)

#### A. Applicable Law

██ Under Rule 12(b)(7), an action must be dismissed for failure to join a party under Rule 19. Fed.R.Civ.P. 12(b)(7). Rule 19 establishes a two-part test for determining whether the court must dismiss an action for failure to join an indispensable party. *See Viacom Int'l, Inc. v. Kearney,* 212 F.3d 721, 724 (2d Cir.2000). First, the court must determine whether an absent party belongs in the suit. *Id.* In other words, the court must ask whether the absentee is required under Rule 19(a). Second, if the absentee is a required party, and if the absentee cannot be joined for jurisdictional or other reasons, the court must determine if the absentee is indispensable under Rule 19(b). *Id.* at 725. If the court determines that

the absent party is indispensible, the action should be dismissed.[7] *Id.*

Under Rule 19(a), a person is "required" if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19(a)(1).

As noted above, the first prong of the Rule 19(a) inquiry focuses on whether the court can afford complete relief in the absence of the non-party. Fed.R.Civ.P. 19(a)(1)(A). As the text of the rule indicates, this subsection focuses on the existing parties to the lawsuit only. *See MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F.3d 377, 385 (2d Cir.2006); *Arkwright–Boston Mfrs. Mut. Ins. Cc. v. City of New York,* 762 F.2d 205, 209 (2d Cir. 1985).

The second prong of the Rule 19(a) inquiry turns on whether the non-party's absence will impair or impede its ability to protect its interests. Fed.R.Civ.P. 19(a)(1)(B)(i). Again, as the plain text of the rule indicates, this subsection examines

---

**6.** As requested, this Court held oral argument on December 1, 2010.

**7.** Rule 19 was amended in 2007. *See Philippines v. Pimentel,* 553 U.S. 851, 855, 128 S.Ct. 2180, 171 L.Ed.2d 131 (2008). Among other things, the amendment eliminated the word "indispensible" from the text of Rule 19. *See id.* at 855–56, 128 S.Ct. 2180. However, courts nevertheless use this term for the sake of convenience. *See CP Solutions PTE, Ltd. v.*

*Gen. Elec. Co.,* 553 F.3d 156, 159 n. 2 (2d Cir.2009).

We also note that the Supreme Court has concluded that the changes ushered in by the 2007 amendment were stylistic rather than substantive. *Pimentel,* 553 U.S. at 855–56, 128 S.Ct. 2180 (agreeing with the Advisory Committee on the 2007 amendments). Accordingly, we rely on cases that pre-date and post-date these amendments.

the effects on the non-party. *See Master-Card,* 471 F.3d at 386–87. In construing this subsection, the Second Circuit has held that:

> [i]t is not enough under Rule [19(a)(1)(B)(i) ] for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule [19(a)(1)(B)(i) ] are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation.

*Id.* at 386–87 (emphasis in original).

Moreover, as this Circuit has held, the plain language of Rule 19(a)(1)(B) requires the absentee to "claim an interest" in the litigation. *See Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 49 (2d Cir.1996) ("[S]atisfying the second prong of Rule 19(a) is contingent upon an initial requirement that the absent party claim a legally protected interest relating to the subject matter of the action.") (internal citations and quotations omitted); *see also Fair Hous. v. Town of Huntington,* No. 02 Civ. 2787(DRH)(WDW), 2010 WL 2730757, at *11 (E.D.N.Y. July 8, 2010); *Gibbs Wire & Steel Co., Inc. v. Johnson,* 255 F.R.D. 326, 329 (D.Conn.2009); *Cont'l Cas. Co. v. Am. Home Assurance Co.,* No. 05 Civ. 7874(LTS)(JCF), 2008 WL 1752231, at *4 (S.D.N.Y. Apr. 14, 2008); *Third Ave. Trust v. SunTrust Bank,* 163 F.Supp.2d 215, 219 (S.D.N.Y.2001).

■ Courts often conclude that the suit will not impair or impede an absentee's interests if the absentee's interests are adequately represented by an existing party. *See Gibbs Wire & Steel,* 255 F.R.D. at 329–30 (collecting cases); *Bank of Am. Corp. v. Braga Lemgruber,* 385 F.Supp.2d 200, 232–33 (S.D.N.Y.2005) (same). In other words, an absentee is unlikely to be a necessary party "if there is another party in the suit with virtually identical interests who would be advancing virtually the same legal and factual positions." *Gibbs Wire & Steel,* 255 F.R.D. at 329 (citing *Polargrid LLC v. Videsh Sanchar Nigam Ltd.,* No. 04 Civ. 9578(TPG), 2006 WL 2266351, at *10 (S.D.N.Y. Aug. 7, 2006)).

■ The third prong of Rule 19(a) focuses on whether the existing parties would be subject to "double, multiple, or otherwise inconsistent obligations." Fed. R.Civ.P. 19(a)(1)(B)(ii). The touchstone is not inconsistent adjudications or results. *See Gibbs Wire & Steel,* 255 F.R.D. at 330; *Nelligan v. Cmty. Gen. Hosp.,* 240 F.R.D. 123, 125 (S.D.N.Y.2007). Rather, "[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Gibbs Wire & Steel,* 255 F.R.D. at 330 (quoting *Delgado v. Plaza Las Ams., Inc.,* 139 F.3d 1, 3 (1st Cir.1998)). Moreover, it is critical that the inconsistent obligations be caused by the non-party's absence. *MasterCard,* 471 F.3d at 388.

■ If a person is required under Rule 19(a) but cannot be joined, "the district court must determine whether the claim should be dismissed because the necessary party is indispensable." *Jonesfilm v. Lion Gate Int'l,* 299 F.3d 134, 139 (2d Cir.2002). Rule 19(b) instructs the court consider the following factors:

> (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff

would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b). To be clear, a party cannot be indispensible, and a case cannot be dismissed for failure to join an indispensible party, unless it is a required party under Rule 19(a). *See Jonesfilm,* 299 F.3d at 139; *Viacom Int'l,* 212 F.3d at 724–25.

The Second Circuit has instructed district courts to take a "flexible approach" to the Rule 19(b) analysis and has concluded that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. New York Property Ins. Underwriting Assoc.,* 815 F.2d 240, 242 (2d Cir.1987); *see also CP Solutions PTE, Ltd. v. Gen. Elec. Co.,* 553 F.3d 156, 159 (2d Cir.2009); *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.,* 312 F.3d 82, 87 (2d Cir. 2002).

## B. The Dismissed Defendants

■ Defendants argue that this case should be dismissed because plaintiff failed to join: (i) the Dismissed Defendants, a group of individuals that includes a New York citizen, as defendants; and (ii) National Union, a New York citizen, as a plaintiff.[8] Defendants make two principal arguments in support of their position that the Dismissed Defendants are necessary parties. First, defendants argue that this is an action that will determine the rights and obligations of the Dismissed Defendants. (D. Mem. 18–19.) Second, defendants argue that any judgment by this

Court will not bind the Dismissed Defendants, rendering any judgment a partial judgment. (D. Mem. at 19–20.)

We disagree. This Court can afford complete relief among the existing parties. In its complaint, plaintiff seeks rescission of and declarations regarding the Excess Policies. The only parties to the Excess Policies are SafeNet and plaintiff, both parties to this action. Thus, if this Court were to grant the requested relief, the judgment would relate to the Excess Policies and would affect the present parties to this action. The presence of the Dismissed Defendants is simply unnecessary to decide the questions raised by plaintiff and the relief requested is not nearly as broad as defendants construe it to be.

Additionally, the absence of the Dismissed Defendants will not impede or impair their interests. As a threshold matter, it is unclear that these absentees have claimed an interest that would suffice under Rule 19(a)(1)(B). Although an absentee is not obliged to intervene, *see Martin v. Wilks,* 490 U.S. 755, 763–65, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989) (superseded by statute on other grounds), Rule 19 plainly requires the absentee to claim an interest in the litigation. *See Peregrine Myanmar,* 89 F.3d at 48–49. But such a claim is conspicuously absent here.

Moreover, the Dismissed Defendants' interests would not be harmed. Assuming that this Court were to declare the Excess Policies void, the Dismissed Defendants could nevertheless receive coverage if they were to make an affirmative showing that they lacked knowledge of the facts imputed to them. Thus, any possible injury to

---

8. Plaintiff is an Indiana corporation with its principal place of business in New Jersey. (Compl. ¶ 1.) SafeNet is a Delaware corporation with its principal place of business in Maryland, Argo is a resident of Maryland, and Caputo is a resident of Pennsylvania.

(Compl. ¶¶ 9, 11.) Thus, unless both the Dismissed Defendants and National Union are necessary parties, complete diversity will be preserved and this Court need not dismiss for failure to join necessary parties.

the Dismissed Defendants—for example, the need to make an affirmative showing regarding their lack of knowledge—would not be caused by the absence of the Dismissed Defendants from this action. Rather, any departure from the status quo would have been caused by the decision of other SafeNet personnel to engage in conduct that voids the Excess Policies.

Defendants have failed to articulate why the Dismissed Defendants' interests would not be adequately represented by the current parties to this action. Indeed, in all likelihood, the absentees' interests would be adequately protected by the existing defendants. The Court cannot envision that the Dismissed Defendants will raise any argument that defendants will not make.

Finally, defendants have not successfully argued that the existing parties would be subject to multiple or inconsistent obligations. It simply remains unclear how the absence of the Dismissed Defendants from this action could leave any of the existing parties unable to comply with another court order.

Accordingly, the Dismissed Defendants are not required parties under Rule 19(a). Consequently, we need not analyze whether they can be joined or whether, under Rule 19(b), the action should be dismissed in light of their absence.

### C. Primary Insurer

We have already concluded that the Dismissed Defendants need not be joined and note that the joinder of National Union would not, alone, destroy complete diversity among the existing parties. Nevertheless, we address whether National Union is a necessary party.

We hold that National Union is not a required party under Rule 19(a). First, for the reasons discussed above, this Court could plainly afford complete relief among the existing parties. National Union is not a party to the Excess Policies and its presence is unnecessary to resolve the issues in this action or to enforce any judgment. Second, this action would not impair or impede National Union's ability to protect its interests. Again, as a threshold matter, National Union has not claimed any interest in this litigation and the parties have not argued otherwise. Additionally, plaintiff and National Union have virtually identical interests regarding the interpretation of the Excess Policies and would advance indistinguishable arguments. Consequently, National Union's interests are unlikely to be impaired. Third, we do not agree that the existing parties could be subject to multiple or inconsistent obligations. This Court simply cannot foresee a scenario in which any of the existing parties would be unable to comply with this Court's order regarding the enforceability of the Excess Policies without breaching another court's order concerning the same issues. Even if, for example, this Court concluded that the Excess Policies were void and another court held that the National Union policies were not voided by the very same conduct, such a result would not require any party to breach either court order and thus does not yield inconsistent obligations.

Finally, defendants cite case law from other circuits where a primary insurer was deemed a necessary party in a coverage action by the insured against the excess insurer. *See, e.g., Rhone–Poulenc Inc. v. Int'l Ins. Co.,* 71 F.3d 1299, 1302 (7th Cir.1995); *Shell Oil Co. v. Aetna Cas. & Surety Co.,* 158 F.R.D. 395, 402–03 (N.D.Ill.1994); *City of Littleton v. Comm. Union Assurance Cos.,* 133 F.R.D. 159, 163–66 (D.Colo.1990). In the context of determining apportionment of liability, such a conclusion may be logical. However, this case arises in a different context

and is properly construed as an action seeking declarations regarding (and rescission of) contracts as opposed to an action seeking declarations of the respective obligations of multiple insurers. Thus, we look to the text of Rule 19 rather than non-binding case law and conclude that National Union is not a required party under Rule 19(a).[9]

Again, because National Union is not a required party under Rule 19(a), we need not analyze whether it can be joined or whether, under Rule 19(b), the action should be dismissed in light of its absence from the action.[10]

\* \* \*

Accordingly, we deny defendants' motion to dismiss for failure to join necessary parties.

## II. Motion to Dismiss Pursuant to Federal Rule 12(b)(1)

■ A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000).

## A. Declaratory Judgment Claim
### 1. Ripeness

■ District courts have statutory authority to adjudicate a declaratory judgment action where an "actual controversy" exists. 28 U.S.C. § 2201(a);[11] *see also E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.,* 241 F.3d 154, 177 (2d Cir.2001). The party seeking the declaratory judgment bears the burden of proving that the case is ripe for adjudication. *See E.R. Squibb,* 241 F.3d at 177 (citing *Cardinal Chem. Co. v. Morton Int'l, Inc.,* 508 U.S. 83, 95, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)).

■ It is well-settled that the party bearing this burden must prove that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *SR Int'l Bus. Ins. Co., Ltd. v. Allianz Ins. Co.,* 343 Fed.Appx. 629, 631–32 (2d Cir.2009) (citing *Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). When applying this standard, courts examine: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy

---

**9.** Such a conclusion is also consistent with the Second Circuit's general disfavor for bright line rules when applying Rule 19. *See CP Solutions,* 553 F.3d at 159.

**10.** Even if the Dismissed Defendants *and* National Union were required under Rule 19(a), the their joinder would destroy diversity, we would not be inclined to dismiss the action under Rule 19(b). For the reasons addressed above, any possible prejudice to the existing parties would be limited. Moreover, any prejudice to the Dismissed Defendants would be negligible and any such prejudice could be lessened by issuing a narrow judgment chat does not address whether or not the Dismissed Defendants knew of any misstatements or omissions. Likewise, there would be little prejudice to National Union, which

may still elect to litigate the validity of its insurance policies. This simply is not a situation where proceeding without the absentees makes "just resolution of the action impossible." *See Jaser,* 815 F.2d at 242.

**11.** Section 2201(a) provides, in relevant part:

In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir.2005); *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir.2003).

■ In the context of an insurance dispute, a declaratory judgment action may be ripe even if the insured has not yet incurred any liability. *See SR Int'l*, 343 Fed.Appx. at 632; *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir.1992). Indeed, as the Second Circuit has explained:

> [t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur. Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite future contingencies that will determine whether a controversy ever actually becomes real.

*Assoc. Indem. Corp.*, 961 F.2d at 35 (internal citations and quotations omitted); *see also E.R. Squibb*, 241 F.3d at 177.

■ Thus, where liability is contingent, courts in this circuit traditionally examine the "practical likelihood" that there will be some type of settlement or judgment against the insurer. *See, e.g., Emp'rs. Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 278 (2d Cir.2008); *E.R. Squibb*, 241 F.3d at 177; *Penn Mut. Life Ins. Co. v. Wolk*, No. 09 Civ. 1808(SAS), 739 F.Supp.2d 387, 392, 2010 WL 2594876, at *3 (S.D.N.Y. June 28, 2010). Even more, the Second Circuit has squarely held that the "practical likelihood" standard applies in an action between an insured and its excess insurer, even where primary coverage has not been exhausted. *E.R. Squibb*, 241 F.3d at 177–78.

■ We conclude that there is an actual controversy that is ripe for adjudication. Plaintiff has carried its burden of proving that there is a substantial controversy between parties having adverse interests. Specifically, plaintiff has shown that the insured and the insurer take vastly different positions regarding the applicability and enforceability of the Excess Policies.

Additionally, plaintiff has shown that the dispute, although related to a contingent liability, is ripe for adjudication. Here, defendants argue that National Union has not paid out the full $10 million limit of its primary policy and therefore the dispute is not ripe. However, National Union has paid upwards of $3.5 million under its primary policy, (D. Mem. at 13) and SafeNet has entered into a $25 million settlement in a securities class action, a category of loss that is arguably covered by the terms of the Excess Policies. (Reynard Decl. Ex. 2 § 1; Ex. 3 § 1.) Thus, it is highly likely that the $10 million National Union coverage limit will be reached and plaintiff will be called upon to cover the losses incurred by SafeNet and its covered executives and employees.[12]

12. The facts present here—including a settlement that would exhaust the primary layer of coverage—are simply not present in the cases cited by defendants in support of their argument that this case is not ripe for adjudication. *See, e.g., Certain Underwriters at Lloyd's v. St. Joe Minerals Corp.*, 90 F.3d 671, 674–75 (2d Cir.1996) (holding that an action seeking a declaration of an excess insurer's obligations was unripe where the practical likelihood that liability would be incurred was low in light of the insured's viable defenses to liability); *United States Underwriters Ins. Co. v. Kum Gang Inc.*, 443 F.Supp.2d 348, 354–55 (E.D.N.Y.2006) (holding that an action seeking a declaration regarding the apportionment of liability among insurers was unripe where the underlying state court action against the insured was still pending and where liability was uncertain); *Bellefonte Reinsurance Co. v. Aetna Cas. & Surety Co.*, 590 F.Supp. 187, 191–92 (S.D.N.Y.1984) (same).

In response, defendants argue that they have yet to request that either National Union or plaintiff cover any of the $25 million settlement. However, unless SafeNet represents that it will not file a notice of claim in connection with the $25 million settlement, we see no reason to alter our conclusion that a claim is highly likely.

A judgment in this action would also offer relief from uncertainty for the insureds and the insurers. A judgment would serve a useful purpose by clarifying the applicability of the Excess Policies, providing appropriate guidance in the midst of an ongoing dispute, and facilitating settlement discussions.[13]

### 2. Abstention

 Next, defendants argue that, even if this Court has jurisdiction to adjudicate the claims, we should nevertheless abstain from granting relief by dismissing the complaint or by staying the action until National Union's liability has been finally adjudicated. For the following reasons, we deny defendants' request.

First, the principal question that plaintiff asks this Court to address is whether Argo's guilty plea voids the Excess Policies. This is a question of contract interpretation and does not require a threshold determination of National Union's liability. Second, this Court will not and need not determine whether SafeNet employees or executives had actual knowledge of the stock options backdating scheme. These issues will need to be addressed—whether through litigation or some form of alterna-

tive dispute resolution—at a later time. It is simply not critical that the individuals' knowledge be determined before or in connection with this dispute. Third, there is no merits resolution here that could prejudice the settlement or the litigants in the underlying class action. As we have noted, the underlying class action was settled and will be subject to final court approval before this Court will have an opportunity to address the merits of the instant action. Fourth, we do not agree that a judgment regarding the validity of the Excess Policies would undermine the "common interests" of the insured and the insurer to reduce liability and insurance costs. At some point in the past, the parties arguably had such a common interest. However, if that interest still existed, SafeNet would have conferred with plaintiff before entering into the $25 million settlement in the shareholder class action. Yet SafeNet elected to settle the shareholder litigation without seeking its insurers' input, thus belying defendants' argument that a common interest still exists or that a decision in this action could undermine that interest.

Rather, for the reasons discussed above, we conclude that a judgment will serve a useful purpose and will offer relief from uncertainty. Thus, we decline to abstain from adjudicating this action.

### B. Rescission Claim

Defendants argue that the rescission claim is unripe for the same reasons ad-

---

**13.** Defendants also argue that the case is unripe because SafeNet has not declined to indemnify Caputo or Argo. Consequently, defendants argue that "any claim for declaratory relief with respect to Federal's obligations as to defendants Caputo and Argo would be entirely advisory." (D. Mem. at 15–16; *see also* D. Reply at 5–6.) We disagree. Coverage under the Excess Policies does not turn on the indemnification decision. In other words, the policies are structured to compensate *SafeNet* in the event it indemnifies the losses of Caputo and/or Argo and to compensate *Caputo and/or Argo* directly in the event SafeNet declines to indemnify the individuals. Thus, we reject defendants' argument that SafeNet's silence regarding indemnification renders plaintiff's claims unripe.

vanced in connection with the declaratory judgment claim. (D. Reply at 4–8.) Because we have concluded that the declaratory judgment claim is ripe, and because defendants offer no independent justification for concluding that the rescission claim is unripe, we likewise conclude that the rescission claim is justiciable.

\* \* \*

Accordingly, we deny defendants' motion to dismiss for lack of subject matter jurisdiction.

### III. Motion to Stay

Because the class action has settled, defendants' motion to stay this action pending the outcome in the class action is denied.

### CONCLUSION

For the foregoing reasons, the motion (docket no. 21) is denied.