**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**October 18, 2012**

**FOR THE TENTH CIRCUIT**
_____

NORTHERN ARAPAHO TRIBE,

      Plaintiff - Appellant,

v.

SCOTT HARNSBERGER, Treasurer,
Fremont County, Wyoming; EDMUND
SCHMIDT, Director, Wyoming
Department of Revenue and Taxation;
DANIEL NOBLE, Administrator, Excise
Tax Division, Wyoming Department of
Revenue and Taxation, in their individual
and official capacities,

      Defendants - Appellees,

and

UNITED STATES OF AMERICA;
EASTERN SHOSHONE TRIBE,

      Third-Party-Defendants –
      Appellees.

No. 09-8098

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 2:08-CV-00215-CAB)**

_____

Kelly A. Rudd (Andrew W. Baldwin, Berthenia Crocker, and Janet E. Millard, with him
on the briefs), Baldwin, Crocker & Rudd, P.C., Lander, Wyoming, for Plaintiff-
Appellant.

Martin L. Hardsocg, Deputy Attorney General, Cheyenne, Wyoming (Gregory Phillips, Attorney General, and David L. Delicath, Deputy Attorney General, Cheyenne, Wyoming, Brian T. Varn, Fremont County Attorney, and Jodi A. Darrough, Deputy Fremont County Attorney, Lander, Wyoming, with him on the briefs), for Defendants-Appellees.

Katherine J. Barton, Attorney, Environmental & Natural Resources Division, Department of Justice, Washington, D.C. (Ignacia S. Moreno, Assistant Attorney General, and Patricia Miller and Elizabeth A. Peterson, Attorneys, Environmental & Natural Resources Division, Department of Justice, Washington, D.C., with her on the brief), for Third-Party-Defendant–Appellee United States of America.

Kimberly D. Varilek, Attorney General for the Eastern Shoshone Tribe, Ft. Washakie, Wyoming (Donald R. Wharton, Native American Rights Fund, Boulder, Colorado, with her on the brief), for Third-Party-Defendant–Appellee Eastern Shoshone Tribe.

_____

Before **KELLY**, **EBEL**, and **HOLMES**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

Plaintiff-Appellant, the Northern Arapaho Tribe ("Appellant" or "Northern Arapaho"), sued various state and county officials in Wyoming, seeking an injunction against the state's imposition of certain vehicle and excise taxes in an area that Appellant contends is Indian country. Appellant claimed that the state may not tax its members in Indian country, and that the Indian country status of the land was conclusively established by an earlier decision of the Wyoming Supreme Court. The district court dismissed the action with prejudice for failure to join a party under Federal Rule of Civil Procedure 12(b)(7) after determining, pursuant to Federal Rule of Civil Procedure 19(b), that two absent entities—the Eastern Shoshone Tribe ("Eastern Shoshone") and the United States—were necessary parties who could not feasibly be joined, and in whose absence the action could not proceed. The district court also concluded that the Indian country

2

status of the land had not been conclusively determined by the earlier state litigation. Appellant appeals both determinations. Exercising jurisdiction under 28 U.S.C. § 1291, we agree that the dismissal of the action was proper because the Eastern Shoshone is a necessary party that cannot feasibly be joined, but we VACATE the judgment and remand with instructions to dismiss without prejudice. We also DENY as moot Appellant's Rule 27.2(A) motion for summary disposition or remand.

## I. BACKGROUND

### A. The Wind River Indian Reservation

The Wind River Indian Reservation ("Reservation") is situated in west-central Wyoming. It is occupied by Appellant and Third-Party Defendant-Appellee the Eastern Shoshone Tribe (collectively, the "Tribes"), who each possess an undivided one-half interest in the Reservation. Both Tribes are federally recognized. See 75 Fed. Reg. 60810, 60810, 60812 (Oct. 1, 2010). Although each tribe is regarded as an independent sovereign, the Tribes jointly govern many aspects of Reservation life. See N. Arapahoe Tribe v. Hodel, 808 F.2d 741, 744 (10th Cir. 1987).

The Reservation was established in 1868 by treaty between the Eastern Shoshone and the United States, under the terms of which the Eastern Shoshone gave the United States some 44 million acres in what is now Colorado, Utah, Idaho, and Wyoming, in exchange for a reservation of about 3 million acres in what is now Wyoming. See Shoshone Tribe v. United States, 299 U.S. 476, 485 (1937). Ten years later, in 1878, the United States located the Northern Arapaho Tribe on the Reservation, without the Eastern Shoshone's consent. See id. at 487-88.

3

Since 1868, there have been three transactions by which the Eastern Shoshone, or the Tribes together, have ceded Reservation land to the United States. See In re The General Adjudication of All Rights to Use Water in the Big Horn River System, 753 P.2d 76, 83-84 (Wyo. 1988) ("Big Horn I"), aff'd by an equally divided court sub nom. Wyoming v. United States, 492 U.S. 406 (1989) (per curiam), abrogated on other grounds by Vaughn v. State, 962 P.2d 149 (Wyo. 1998). For purposes of this case, the most relevant such transaction occurred in 1904 ("1904 Agreement"). In that year, the United States Indian Inspector, James McLaughlin, signed an agreement "with the Shoshone and Arapahoe tribes of Indians belonging on the Shoshone or Wind River Reservation in the State of Wyoming" to open an additional 1.4 million acres of the Tribes' land to settlement. Act of March 3, 1905, ch. 1452, 33 Stat. 1016; accord Big Horn I, 753 P.2d at 84. The Tribes agreed to "cede, grant, and relinquish to the United States all right, title, and interest" in the ceded lands, in exchange for sale proceeds and other benefits. Id. Congress ratified this agreement, with some amendments and modifications, by a public law enacted in 1905. Act of March 3, 1905, ch. 1452. Some of the lands ceded in this transaction were eventually restored to the Tribes, and the size of the reservation has been largely unchanged since the 1950s. See Big Horn I, 753 P.2d at 84. Some of the ceded land, however, has never been restored to the Tribes. Put another way, there are lands that lie within the original exterior boundaries of the Reservation, which were ceded in the 1905 transaction, but which have never formally been restored to the tribes. These lands are referred to by the parties as "the 1905 Act Area." Aple. State Br. at 2.

4

Some of this land is held in trust by the United States for the benefit of the Tribes,[1] while some of this land is held in fee by other persons and entities.

**B.    The "Big Horn I" litigation**

"Big Horn I" is a 1988 decision of the Wyoming Supreme Court that established, inter alia, priority of water rights along the Big Horn River in Wyoming.  See 753 P.2d 76 (Wyo. 1988).  The Tribes, the United States, and the State of Wyoming were all parties in that case.  Among the final findings of the Wyoming Supreme Court in that case were that the Tribes had water rights dating back to the 1868 treaty establishing the Reservation, and that the cession of land under the 1905 Act had not clearly stripped the Tribes of their reserved water rights in the ceded lands.  See id. at 90-94.  That is, the Wyoming high court determined that there was a reserved water right for the Reservation that had not been abrogated by the 1905 Act.  See id. at 93-94.  For purposes of litigating that water rights case, the parties (the Tribes, the United States, and the State of Wyoming) entered into a "Stipulation Concerning the Boundaries of the Wind River Indian Reservation."  Aplt. App. at 946.  The stipulation set forth "the exterior boundaries of the Wind River Indian Reservation" "for the purposes of this litigation only."  Id.  The parties further agreed that "[t]his stipulation shall not affect the jurisdiction of any parties over lands within the exterior boundaries of the Reservation."  Id. at 959.

**C.    The present litigation**

---

[1] These are lands that passed into private ownership under the 1905 Act, but which the United States later reacquired in trust for the Tribes.  See Big Horn I, 753 P.2d at 84.

On September 30, 2008, Appellant brought suit in the District of Wyoming, seeking declaratory and injunctive relief against Defendants-Appellees Harnsberger, Noble, and Schmidt ("State and County Defendants"), who are county and state tax officials in Wyoming. Appellant claimed that the State and County Defendants' imposition of vehicle registration and excise taxes on Indians living on fee lands in the 1905 Act Area violates Appellant's federal treaty and Constitutional rights. Appellant takes the position in this litigation that the 1905 cession of land did not affect the land's status as "Indian country," as that term is defined in 18 U.S.C. § 1151.[2] Because the parties agree that the State of Wyoming may not tax Indians who live in Indian country, the sole issue raised by Appellant's complaint was whether fee lands in the 1905 Act Area are "Indian country." Appellant alleged that the Indian country status of the entire area was conclusively decided in Big Horn I, and that principles of collateral estoppel bar the State of Wyoming from relitigating that issue.

The State and County Defendants, for their part, moved to dismiss this federal action under Fed. R. Civ. P. 12(b)(7), contending that both the United States and the

_____

[2] 18 U.S.C. § 1151, "Indian country defined," provides, in pertinent part:

the term "Indian country", as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.

Eastern Shoshone were required to be joined as parties under Fed. R. Civ. P. 19. The district court initially denied the motions to dismiss and ordered the Eastern Shoshone and the United States joined as third-party defendants. Once joined, both the Eastern Shoshone and the United States successfully moved under Rule 12(b)(1) to be dismissed from the case on the grounds of sovereign immunity. The State and County Defendants then renewed their motions to dismiss the action, claiming that the Eastern Shoshone and the United States were not only required, but also indispensable, parties because the case could not "in equity and good conscience" proceed without them. Fed. R. Civ. P. 19(b).

The district court agreed, and dismissed the action with prejudice. In so doing, the district court also addressed a merits-related issue, concluding that Big Horn I had not conclusively established, for collateral estoppel purposes, the Indian country status of the 1905 Act Area. The Northern Arapaho appeals, arguing primarily that the district court erred by not according the Big Horn I litigation preclusive effect as to the Indian country status of the 1905 Act Area. Secondarily, the Northern Arapaho argues that the district court should not have dismissed its claim under Rule 19(b).

## II.    DISCUSSION

### A.    Standard of review

Dismissal under Rule 12(b)(7) for failure to join a party is reviewed for an abuse of discretion. Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292,

7

1293 (10th Cir. 1994). A district court's decision that a party is a required party under Rule 19(a) or an indispensable party under Rule 19(b) is reviewed for an abuse of discretion. Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1258 (10th Cir. 2001). "The court abuses its discretion in making an indispensability determination when it fails to consider a relevant factor, relies on an improper factor, or relies on grounds that do not reasonably support its conclusion." Davis ex rel. Davis v. United States, 343 F.3d 1282, 1289 (10th Cir. 2003). Legal conclusions underlying the district court's Rule 19 determinations are reviewed de novo. Id. For example, a district court's determination that a party is entitled to sovereign immunity is a question of law that this court reviews de novo. See Nanomantube v. Kickapoo Tribe in Kan., 631 F.3d 1150, 1151 (10th Cir. 2011).

**B.     The district court did not abuse its discretion in dismissing the action under Fed. R. Civ. P. 19(b).**

We agree that the Eastern Shoshone was an indispensable party under Rule 19(b), and hold that the district court did not abuse its discretion in dismissing the action on that basis. Because of this ruling, we need not, and do not, decide whether the United States was a required party and whether the dismissal can also be supported on that ground. We also conclude, however, that the district court erred in dismissing the action with prejudice. Accordingly, we VACATE the district court's judgment and REMAND with instructions to dismiss the action without prejudice.

Rule 19 of the Federal Rules of Civil Procedure, titled "Required Joinder of Parties," provides, in relevant part,

8

(a) Persons Required to Be Joined if Feasible.

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) Joinder by Court Order. If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) Venue. If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

A finding of indispensability under Fed. R. Civ. P. 19(b) has three parts. See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001). First, the court must find that a prospective party is "required to be joined" under Rule 19(a).[3] Second, the court must determine that the required party cannot feasibly be joined. Then the court must determine, under Rule 19(b), whether the required-but-not-feasibly-joined party is so important to the action that the action cannot "in equity and good conscience" proceed in that person's absence. Fed. R. Civ. P. 19(b). If that is the case, then the action "should be dismissed." Id.

### 1. The Eastern Shoshone was required to be joined under Rule 19(a)

The district court's Rule 19(a) analysis, contained within its order originally joining the Eastern Shoshone and the United States as third-party defendants, was brief. The court concluded that both the Eastern Shoshone and the United States were required parties under Rule 19(a), because they were all "parties to the 1905 Act that is disputed in

---

[3] The language of Rule 19(a), since the 2007 amendments to the Federal Rules of Civil Procedure, is cast in terms of "required" parties. The parties and the district court use "required" interchangeably with "necessary." In addition, although the word "indispensable" no longer appears in text of Rule 19(b) since the 2007 amendments, it is still used to denote a required party in whose absence the action cannot proceed.

this case."[4]  Aplt. App. at 344-45.  In its later order finally dismissing the case under Rule 19(b), the district court said it "w[ould] not revisit its earlier ruling that the United States and [the Eastern Shoshone] are required parties."  Id. at 4214.

We agree with the district court that the Eastern Shoshone was a required party under Rule 19(a), although we do not rest our conclusion on the fact that it was a party to the 1904 Agreement.  The Eastern Shoshone has "an interest relating to the subject of the action"—namely the Indian country status of the 1905 Act Area.  Fed. R. Civ. P. 19(a)(1)(B).  A determination of that status in the absence of the Eastern Shoshone would, "as a practical matter[,] impair or impede" the ability of the Eastern Shoshone to protect that interest.  Id.  This is because whether a particular tract of land is or is not Indian country has significant implications for the governance of that land and the events occurring upon it.  See Indian Country, U.S.A., Inc. v. Oklahoma ex rel. Okla. Tax Comm'n, 829 F.2d 967, 973 (10th Cir. 1987) ("Numerous cases confirm the principle that the Indian country classification is the benchmark for approaching the allocation of federal, tribal, and state authority with respect to Indians and Indian lands.").  If the area is not Indian country, then the State of Wyoming may continue to exercise civil and criminal jurisdiction over that area, including levying the taxes complained of here.  See Id.  ("Although section 1151 by its terms defines Indian country for purposes of determining federal criminal jurisdiction, the classification generally applies to questions

---

[4] We assume the district court meant that these three entities were parties to the 1904 Agreement, which was codified, as amended, in the 1905 Act.

11

of both civil and criminal jurisdiction."). If the area <u>is</u> Indian country, not only does the State of Wyoming lose jurisdiction (including criminal jurisdiction) over the area, but the Northern Arapaho and the Eastern Shoshone must assume greater jurisdiction over it. <u>See, e.g.</u>, 18 U.S.C. § 1151 ("'Indian country', as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government . . . .").

Moreover, the Eastern Shoshone is "so situated that disposing of the action in [its] absence may . . . leave an existing party"—namely the State of Wyoming—"subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii). Even if the court were to rule in favor of the State and County Defendants, still the State of Wyoming would be left at a substantial risk of inconsistent obligations, because nothing would stop the Eastern Shoshone, unbound by the decision, from relitigating the issue. <u>See</u> <u>Sierra Club v. Hodel</u>, 848 F.2d 1068, 1077 (10th Cir. 1988) ("Further, [the defendant] would face a substantial risk of inconsistent obligations if the [absent person], unbound by the outcome in this case, sought declaratory or other relief against [the defendant] at variance with the orders in this case."), <u>overruled on other grounds by</u> <u>Village of Los Ranchos de Albuquerque v. Marsh</u>, 956 F.2d 970 (10th Cir. 1992) (en banc).

It is true that in other cases we have declined to find a person to be an indispensable party where the possibility of inconsistent obligations was simply speculative. <u>See</u> <u>Sac & Fox Nation of Mo.</u>, 240 F.3d at 1259 ("As noted above, nothing in the record indicates the possibility of additional lawsuits involving this same subject

12

matter. . . 'The key is whether the possibility of being subject to multiple obligations is real; an unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria.'" (citation omitted) (quoting 7 Wright, Miller & Kane, Federal Practice & Procedure § 1604, at 62 (2d ed. 1986))); Air-Exec, Inc. v. Two Jacks, Inc., 584 F.2d 942, 945 (10th Cir. 1978) ("[W]e are to look at the practical probabilities more than the theoretical possibilities. The practical probabilities here seem rather remote." (citation omitted)). But here, it seems clear that the risk of inconsistent obligations is in fact substantial. The State of Wyoming identifies several contexts in which the issue of Indian country status is being or will almost certainly be litigated again, including pending litigation regarding tribal court jurisdiction and a pending administrative proceeding before the United States Environmental Protection Agency. Further, the fact that the Eastern Shoshone sought to invalidate the district court's ruling with respect to the preclusive effect of Big Horn I so that it will not be collaterally estopped from litigating that issue in the future strongly suggests that it does, in fact, intend to litigate that issue in the future. See Aplt. Ap. at 4273-74 ("There is no doubt that . . . Defendants in this case . . . will attempt to use the Order's findings on preclusion . . . to argue that the Shoshone Tribe is estopped by the judgment in this case from making that argument to other tribunals."). That the Eastern Shoshone might not prevail in subsequent litigation does not render the risk any less substantial. "[T]he defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations." Sierra Club, 848 F.2d at 1078 (internal quotation marks omitted).

In sum, the Eastern Shoshone has an interest in the litigation that could be harmed by proceeding in its absence, and proceeding in the absence of the Eastern Shoshone would also place the State of Wyoming at a substantial risk of incurring multiple inconsistent obligations. The Eastern Shoshone is therefore required to be joined under Rule 19(a).

In an effort to avoid this conclusion, the Northern Arapaho argue that the Eastern Shoshone should not be considered a required party because (1) the "public rights" exception to traditional joinder doctrine permits an action seeking to vindicate public rights to go forward in the absence of indispensable parties; and (2) "neighbor tribes" are not required parties when a tribe seeks declaratory and injunctive relief against state officials who infringe treaty rights. We reject these arguments in turn.

First, this is not a "public rights" case seeking to vindicate broadly applicable public rights, such as the prevention of unfair labor practices or administrative compliance with environmental protection statutes and regulations. See, e.g., S. Utah Wilderness Alliance v. Kempthorne, 525 F.3d 966, 969 n.2 (10th Cir. 2008); Makah v. Verity, 910 F.2d 555, 559 n.6 (9th Cir. 1990); Nat'l Licorice Co. v. NLRB, 309 U.S. 350, 363 (1940) ("In a proceeding so narrowly restricted to the protection and enforcement of public rights, there is little scope or need for the traditional rules governing the joinder of parties in litigation determining private rights." (emphasis added)). Contrary to Appellant's assertion, Makah does not stand for the proposition that the vindication of treaty rights falls within the public rights exception. The "public right" that the Makah court permitted to be vindicated in the absence of other tribes was not a treaty right, but

14

rather the right to seek to have federal officials "follow statutory procedures in the future," making the action "one that potentially benefits all who participate in the ocean fishery." See id. at 559 n.6. Here, by contrast, Appellant seeks only to enforce its own, treaty-based rights; thus, the "public rights" exception recognized in, inter alia, National Licorice and Southern Utah Wilderness Alliance does not apply.

Second, the cases Appellant cites for the proposition that "neighbor tribes" whose treaty rights are potentially affected are not required parties when a tribe seeks declaratory and injunctive relief against state officials regarding treaty rights are wrongly characterized or inapposite. In Makah, the court upheld the district court's dismissal of the plaintiff tribe's treaty-based claims, finding that the absent tribes were necessary and indispensable. See Makah, 910 F.2d at 559. In Mille Lacs Band of Chippewa Indians v. Minnesota, 853 F. Supp. 1118, 1130-31 (D. Minn. 1994), the district court found that absent, legally distinct bands of a tribe were not required parties in a dispute between one band and the state over treaty-based hunting, fishing, and gathering rights granted to the tribe by the United States, because it would result only in a declaration of the tribe's treaty rights vis-à-vis the state, and not the tribe's treaty rights vis-à-vis other tribes. But Mille Lacs did not present the situation here, where two distinct tribes possess an equal undivided interest in the same land, and the treaty right at issue implicates the very status of that land. The Northern Arapaho's treaty rights vis-à-vis the State of Wyoming are inseparable from the Eastern Shoshone's treaty rights. It is disingenuous to discuss this issue in terms of "neighbor tribes" when the Northern Arapaho and the Eastern Shoshone

are not "neighbors" occupying adjacent parcels of land but are effectively co-tenants occupying the same land.

### 2. It was not feasible to join the Eastern Shoshone

The district court held that sovereign immunity prevented joinder of the Eastern Shoshone, and that no exception to that immunity applies. Appellant does not dispute that the Eastern Shoshone is a sovereign entitled to immunity. Instead, Appellant argues that the Eastern Shoshone may be joined under Ex parte Young, 209 U.S. 123 (1908). We reject that argument.

The Eastern Shoshone Tribe is a federally recognized Indian tribe. See 75 Fed. Reg. at 60812. Indian tribes are regarded as sovereign and immune from suit. See Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509 (1991). Only a "clear waiver by the tribe or congressional abrogation" limits a tribe's sovereign immunity. Id. A waiver of tribal sovereign immunity "cannot be implied but must be unequivocally expressed." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978) (internal quotation marks omitted).

Under Ex parte Young, 209 U.S. at 159-60, an exception to state sovereign immunity exists "for suits against state officials seeking to enjoin alleged ongoing violations of federal law." Crowe & Dunlevy, P.C. v. Stidham, 640 F.3d 1140, 1154 (10th Cir. 2011). This Court recently held that Ex parte Young's exception to state sovereign immunity is applicable to tribal sovereign immunity as well. See id. (joining the Eighth, Eleventh, and D.C. Circuits in so holding). Appellant cites Crowe & Dunlevy for the proposition that the Eastern Shoshone may therefore be joined under Ex parte

16

<u>Young</u>.  However, <u>Ex parte Young</u>'s exception to sovereign immunity is simply not applicable here.  Appellant has not alleged that the Eastern Shoshone or any of its officials has violated federal law.  Appellant makes its claim only against state and county officials in Wyoming.  Appellant offers no explanation as to how the doctrine of <u>Ex parte Young</u> permits a sovereign to be joined against its will in a suit that does not allege that the <u>sovereign</u> (or its officials), as opposed to someone else, violated federal law.

Thus, the district court correctly held that the Eastern Shoshone is a sovereign and not amenable to suit, and that no exception to sovereign immunity permits its joinder. The Eastern Shoshone could not, therefore, feasibly be joined.

**3.    The district court did not abuse its discretion in determining that "equity and good conscience" required the case to be dismissed under Fed. R. Civ. P. 19(b)**

Having concluded that the Eastern Shoshone was a required party that could not feasibly be joined by virtue of its sovereign immunity, the district court examined the Rule 19(b) factors and determined that the balance weighed in favor of dismissal.  We agree that these factors weigh in favor of dismissal, and that the action could not proceed "in equity and good conscience".

**a.    Factor 1: There would be prejudice to existing parties and absent persons**

Rule 19(b)(1) requires the court to consider the extent to which "a judgment rendered in the person's absence might prejudice the person."  <u>See</u> <u>Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel</u>, 883 F.2d 890, 894 n.4 (10th Cir. 1989).

17

"This prejudice test is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit." Id. For the same reasons stated above, we conclude that the Eastern Shoshone and the State of Wyoming would be prejudiced if the case were to proceed in the absence of the Eastern Shoshone. This factor weighs in favor of dismissal.[5]

### b.      Factor 2: The prejudice cannot be lessened or avoided

Rule 19(b)(2) requires the court to consider "the extent . . . to which any prejudice could be lessened or avoided" by tailoring the judgment or relief in some way. Fed. R. Civ. P. 19(b)(2). But in light of the nature of the interests implicated, and the all-or-nothing nature of those interests (i.e., the area either is Indian country, or it is not), the district court correctly found that there would be no way to lessen or avoid the prejudice that the Eastern Shoshone and the State of Wyoming would suffer if a ruling were made without all the proper parties before the court. Thus, this factor too weighs in favor of dismissal.[6]

---

[5] We reject Appellant's assertion that an absent person's interest must involve title to real property, finite resources, or contract rights in order to be relevant to the prejudice analysis of Rule 19(b)(1). Provident Tradesmens Bank & Trust Co. v. Patterson, which Appellant cites for this proposition, says no such thing. See 390 U.S. 102, 108 (1968). Patterson simply happened to involve potentially competing claims to a limited pool of insurance proceeds. See id. at 104-05. It by no means held that only interests in "finite property" are interests that could be "prejudiced" for purposes of this inquiry.

[6] Appellant appears to contend that because there is no prejudice to any person under Rule 19(b)(1), there is no need to consider this factor. But this Court has already considered and rejected a similar argument. See Davis, 343 F.3d at 1293 ("[Plaintiffs]

(Continued . . .)

### c. Factor 3: The judgment would not be adequate in the absence of the Eastern Shoshone

Rule 19(b)(3)'s instruction to consider "whether a judgment rendered in the person's absence would be adequate" is "not intended to address the adequacy of the judgment from the plaintiff's point of view." Davis, 343 F.3d at 1292-93 (citing Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 111 (1968)) (internal quotation marks omitted). "Rather, the factor is intended to address the adequacy of the dispute's resolution." Id. at 1293. This factor is concerned with "the interest of the courts and the public in complete, consistent and efficient settlement of controversies." Patterson, 390 U.S. at 111. "We read the Rule's third criterion . . . to refer to this public stake in settling disputes by wholes, whenever possible . . . ." Id.; accord Republic of Philippines v. Pimentel, 553 U.S. 851, 870-71 (2008). Permitting this litigation to proceed would not wholly settle the underlying dispute if the Eastern Shoshone were not participating and bound by the judgment.[7] There would be nothing

---

argue that the factor is irrelevant because any prejudice to the [absent person] is not legally cognizable. As previously discussed, this argument goes to the merits of their claim, rather than the potential harm to the [indispensable party] if Defendants lose. Their challenge, therefore, must fail.").

[7] Appellant contends there would be nothing "partial" about the resolution, because of Big Horn I's preclusive effect on the question at issue here. But Appellant's (Continued . . .)
argument assumes its central premise—i.e., that Big Horn I conclusively established the Indian country status of the area—when that premise has not yet been established. See Davis, 343 F.3d at 1291 ("Plaintiff's narrow interpretation . . . inappropriately presupposes Plaintiffs' success on the merits. . . . Such an approach is untenable because it would render the Rule 19 analysis an adjudication on the merits." (internal quotation marks omitted)). Moreover, as we have just explained, Appellant misconstrues the

(Continued . . .)

19

"complete, consistent, [or] efficient," Patterson, 390 U.S. at 111, about the settlement of this controversy if the State of Wyoming were required to relitigate the issue with the Eastern Shoshone, with potentially different results. This factor, therefore, weighs in favor of dismissal.

### d. Factor 4: Plaintiff's lack of adequate remedy is not dispositive

Under Rule 19(b)(4), the court considers "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." The parties do not dispute that dismissal of this action leaves the Northern Arapaho with no remedy at all, let alone an adequate one. But this fact, while unsatisfying, does not preclude dismissal, particularly "[w]hen viewed in light of the Tribe's sovereign immunity and the first three Rule 19(b) factors." Davis, 343 F.3d at 1294; see Pimentel, 553 U.S. at 872 ("Dismissal under Rule 19(b) will mean, in some instances, that plaintiffs will be left without a forum for definitive resolution of their claims."); Davis, 343 F.3d at 1294 ("[W]e do not believe that the absence of an alternative forum weighs so heavily against dismissal that the district court abused its discretion in deciding not to retain Plaintiffs' case."); United States ex rel. Hall v. Tribal Dev. Corp., 100 F.3d 476, 480 (7th Cir. 1996) ("A plaintiff's inability to seek relief, however, does not automatically preclude dismissal, particularly where that inability results from a tribe's exercise of its right to sovereign immunity.");

---

district court's concern with "partial" resolution. The question is not whether determining the Indian country status of the 1905 Act Area would wholly settle its Indian country status. It is a question of whether a judgment based on that determination, rendered in the absence of the Eastern Shoshone, would wholly settle the underlying dispute over the state's power to tax in the 1905 Act Area.

<u>Makah</u>, 910 F.2d at 560 ("[L]ack of an alternative forum does not automatically prevent dismissal of a suit. Sovereign immunity may leave a party with no forum for its claims." (citations omitted)). Although this factor weighs in favor of not dismissing the action, it does not outweigh the other three factors, all of which support dismissal.

In sum, the district court did not abuse its discretion in deciding that the balance of Rule 19(b) factors weighed in favor of dismissal, where the Eastern Shoshone could not be joined because of its sovereign immunity. <u>See</u> <u>Pimentel</u>, 553 U.S. at 867 ("[W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is potential for injury to the interests of the absent sovereign."); <u>Enter. Mgmt. Consultants, Inc.</u>, 883 F.2d at 894 ("When, as here, a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b) . . . ." (internal quotation marks omitted)).

**4.      Dismissal should have been without prejudice**

Although we hold that the district court did not abuse its discretion in dismissing the action on indispensable-party grounds, the district court's disposition was not an adjudication on the merits. <u>See</u> Fed. R. Civ. P. 41(b) ("Unless the dismissal order states otherwise, a dismissal under this subdivision (b) [governing involuntary dismissal] and any dismissal not under this rule—<u>except</u> one for lack of jurisdiction, improper venue, or <u>failure to join a party under Rule 19</u>—operates as an adjudication on the merits." (emphasis added)). Thus, dismissal of the action should have been without prejudice, and without preclusive effect. <u>See</u> <u>Univ. of Pittsburgh v. Varian Med. Sys., Inc.</u>, 569 F.3d 1328, 1332 (Fed. Cir. 2009) ("[I]t is clear that a dismissal for failure to join a party is not

an adjudication on the merits, and thus, should not have preclusive effect--i.e., such a dismissal should be without prejudice."); Murphy v. Klein Tools, Inc., 935 F.2d 1127, 1128 (10th Cir. 1991) (per curiam) ("We agree that when the preclusive effects of federal court dismissal decisions are at issue, Rule 41(b) must be considered."); 5C Wright, Miller & Kane, Federal Practice & Procedure § 1359, at 71 (3d ed. 2004).

Accordingly, we VACATE the district court's dismissal of the action with prejudice and REMAND with instructions to dismiss the action without prejudice.

**C.     Whether it was necessary for the district court to opine on the preclusive effect, if any, of Big Horn I**

In dismissing this action, the district court first discussed the preclusive effect of Big Horn I, concluding that it had not conclusively established that the 1905 Act Area was Indian country.  The district court addressed this merits-related question because Appellant sought to make the preclusive effect of Big Horn I relevant not just to the central merits issue (i.e., whether the state could tax in the 1905 Act Area), but also to the joinder question under Rule 19, by asserting , inter alia, that the Eastern Shoshone had waived its sovereign immunity in the present action by virtue of its participation in the Big Horn I litigation.[8]  Consequently, the district court felt compelled to address Big Horn I's preclusive effect.

---

[8] Appellant has abandoned both of these specific arguments on appeal.  Instead, as discussed supra, Appellant now argues that the Eastern Shoshone may be joined under Ex parte Young.  We reject that argument.

Before this Court, the Eastern Shoshone and the United States argue that it was unnecessary for the district court to rule on Big Horn I's preclusive effect on the question of the Indian country status of the 1905 Act Area. Even assuming arguendo that the Eastern Shoshone has standing to raise such an argument, it is unnecessary for us to reach this issue. Presumably, the Eastern Shoshone would like this Court to vacate that portion of the district court's order, as it requested in its motion to alter or amend the judgment, below. However, the Eastern Shoshone has not appealed the district court's denial of that motion, and it is unclear what exactly the Eastern Shoshone would have this Court do, even if we agreed that the district court should not have reached the question. To the extent that the Eastern Shoshone is concerned about being collaterally estopped from litigating the issue of Big Horn I's preclusive effect in the future, that fear seems unfounded. Collateral estoppel bars relitigation of a specific issue only when certain conditions are met:

> (1) The issue precluded is identical to an issue actually litigated and necessarily adjudicated in the prior proceeding; (2) The party against whom estoppel was sought was a party to or was in privity with a party to the prior proceeding; (3) There was a final judgment on the merits in the prior proceeding; (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issues in the prior proceeding.

Nichols v. Bd. of Cnty. Comm'rs, 506 F.3d 962, 967 (10th Cir. 2007) (emphasis added). The Eastern Shoshone was not properly a party to the proceedings below in this case, and it did not have a full and fair opportunity to litigate the issue. This alone would appear to foreclose the applicability of collateral estoppel. Moreover, our conclusion that the

23

dismissal under Rule 12(b)(7) was not an adjudication on the merits ought further to allay that concern.

### III. CONCLUSION

For the foregoing reasons, we find no abuse of discretion in the district court's dismissal of the action on the grounds that the Eastern Shoshone was an indispensable party, and therefore AFFIRM. But we VACATE the judgment to the extent that it dismissed the action with prejudice, and REMAND with instructions to dismiss the action without prejudice. We express no opinion on the preclusive effect of Big Horn I.

Appellant's Rule 27.2(A) motion for summary disposition or remand is DENIED as moot.